WILLIS T. FINK *v.* THE ALBANY AND SUSQUEHANNA RAIL-ROAD COMPANY.

(GENERAL TERM, THIRD DEPARTMENT, NOVEMBER, 1871.)

The conductor of an express train of cars may lawfully stop the train and expel a passenger who holds a ticket to a station between the place where fare is demanded and the first station at which the train, by the published time tables, is to stop, if such passenger refuse to pay the fare which, in addition to the sum paid for his ticket, would entitle him to ride to such latter station. And this is so, notwithstanding the train may occasionally stop at the station for which the passenger has a ticket, if at the time the fare is demanded, facts do not exist which call for its stoppage there.

Where the conductor of a train of cars, in good faith, and without violence, expels a passenger, the railroad company is not liable for anything beyond the actual damages.

EXCEPTIONS ordered to be heard in the first instance at General Term on a trial at the Otsego circuit. On the trial the evidence showed that Otego and Unadilla are stations about seven miles apart on the road of defendants; Wells Bridge is a station between them.

The plaintiff lived between Otego and Wells Bridge, but he was about one mile nearer home by getting off at Otego.

About 12 o'clock, M. of January 26, 1870, he purchased a ticket at Wells Bridge for Unadilla, and went to that place. Upon his inquiring when he purchased this ticket, the agent told him there was a train coming east about 4 o'clock, which only stopped there when it had passengers for that place from Binghamton. Plaintiff said if he could manage to get a ticket he could get off. When at Unadilla the baggageman told him the train in question did not stop there. Plaintiff said if he got a ticket he could get off, and if they took him to Otego he would be a mile nearer home.

A time table, in large type, showing that this train did not stop at Wells Bridge, was posted beside the opening at which tickets are purchased, at the Unadilla station.

The plaintiff denied the statements of the ticket agent and the baggageman, and said that he did not try to get any knowledge from the advertisement, but that the ticket agent at Wells Bridge told him that if he got a ticket for that place they would let him off there.

The plaintiff bought at Unadilla a ticket for Wells Bridge, paying fifteen cents for it, and got on the train. When the train was three-fourths of a mile from Unadilla the conductor called upon plaintiff for his ticket. He showed it, when he was told that the train did not stop at Wells Bridge, and that he must pay fifteen cents fare to Otego, or get off. He refused to do either. The conductor stopped the train, when, upon the conductor's request, the plaintiff got off.

It was shown in evidence that this train, although not advertised to do so, did in fact, stop at Wells Bridge to let off and receive through passengers coming from or going to Binghamton or Albany. The conductor was dead, and there was a question whether the train on the day in question stopped at Wells Bridge.

At the close of the evidence the defendant's counsel moved that the plaintiff be nonsuited on the grounds:

1. The company had the right to adopt reasonable regula-tions as to the running of its trains; that those proved to have been established are reasonable ones; and that it was the duty of the plaintiff to inquire or inform himself as to them. If he was ignorant of them it was his own fault.

2. That the conductor had no authority to, and could not properly, waive these regulations, and if, on other occasions, he had undertaken to do it, this would not be evidence that these regulations were not in force at the time in question.

3. The company in selling the ticket in question, did not thereby undertake to carry the plaintiff by any particular train. If there was any other or further agreement on the part of the defendant, the *onus* is upon the plaintiff to show it.

4. That the published time table showed what the com-pany undertook to do on its part, and applied to this case it was an undertaking to carry the plaintiff upon a train adver-tised to stop at Wells Bridge; it does not matter what the ticket agent at Unadilla may have said to him, as he had no authority to modify the regulations or make any new or different contract for the company, or to undertake to carry the plaintiff by any other train than that advertised.

5. The plaintiff only having a ticket for Wells Bridge, and having got upon this train, which was not advertised to stop at Wells Bridge, and upon demand by the conductor, refusing to pay his fare to Otego, the next place at which the train was advertised to stop and did stop, he was in the same position as a passenger refusing to pay his fare, and it was the right and duty of the conductor to put him off.

The plaintiff's counsel requested the court to rule as mat-ter of law that the plaintiff was entitled to recover on the undisputed facts of the case, and that the only question for the jury was a question of damages, and that the ticket pur-chased by the plaintiff was a contract which bound the com-pany to carry him to and allow him to get off at Wells Bridge.

The court denied the motion for a nonsuit, to which defend-ants's counsel excepted.

The court further ruled and decided that the plaintiff had a right with the ticket to get upon the train and take the chance of its stopping at Wells Bridge, but the train was not required to stop there on his account. If it did not stop plaintiff would be obliged to pay through to the next station, and the conductor having put him off soon after leaving Unadilla, a long distance from Wells Bridge, on the plaintiff's refusing to pay through to Otego, the plaintiff is entitled to recover, and that the only question to submit to the jury was the question of damages. To which the defendant's counsel excepted.

The judge charged the jury as follows: On the 26th of January last, the plaintiff was riding on the cars of the Albany and Susquehanna Railroad Company on the evening train from Unadilla, up the river. He had a ticket which was from Unadilla to Wells Bridge, which is the next station from Unadilla to the north. He being about a mile from Unadilla, the conductor put him off the train, claiming that he was improperly and illegally there.

For the purposes of this trial, I have decided that the conductor had no right to put off plaintiff (to which defendant's counsel excepted), therefore the action is undefended (to which defendant's counsel excepted), and it is for you to say how much damages the plaintiff should recover (to which defendant's counsel excepted). Now, in determing this question of damages, *first*, you look at the actual damage the plaintiff sustained in consequence of thus being ejected from the cars of the company.

The plaintiff testifies that he was about three miles from Wells Bridge, the station to which he desired to go, and from which he was to return home, his home being four miles from there; that, in consequence of being thus ejected, he was compelled to walk three miles to Wells Bridge, and lost a chance to ride home, and had to walk four miles further. You must take into consideration the damages he sustained thereby, and the injury to his feelings (to which defendant's

Fink *v.* The Albany and Susquehanna Railroad Company.

counsel excepted), and the indignity to his person, as actual damages.

In addition to the actual damages, you have the right to add smart money, or exemplary damages, as compensation to the plaintiff for being compelled to come into court to enforce his rights (to which defendant's counsel excepted), and at the same time punish the company for thus interfering with the rights of the plaintiff. The right of this plaintiff to exemplary damages depends very much upon the acts of the defendant in this transaction (to which defendant's counsel excepted).

If you should believe that the conductor acted willfully and maliciously toward the plaintiff in ejecting him from the car, it would be different from what it would be if he acted under a mistake, supposing the plaintiff not to have been rightfully there. If the conductor supposed and believed that the plaintiff was not rightfully there, and had no right to be on the train, then it was his duty to eject this man from the car: he is there for that purpose, and to see that no one rides except those having a right to do so. If you find that he acted in good faith, then the smart money should not be so heavy.

If, on the other hand, he acted willfully, and turned this man off, knowing he had a right to be there, the amount of smart money should be somewhat increased.

In determining the actual damages you must consider all the circumstances of the case. This defendant is not to be saddled with damages because it is a railroad company. The same rules and regulations apply to a railroad company as to an individual. You will regard this matter the same as though it was an action between two individuals, and give to the plaintiff such damages as in your judgment as men of experience you think he is entitled to. If you believe that the conductor acted willfully and maliciously, then you may give such damages as will teach this company to respect the rights of those who travel in their cars (to which the defendant's counsel excepted).

If, on the other hand, you believe he acted in good faith, a large amount of damages should not be added.

Defendant's counsel requested the court to charge the jury that the plaintiff in any event is only entitled to recover actual damages. The court refused so to charge, and defendant's counsel excepted. Defendant's counsel also separately requested the court to charge the several propositions stated in defendant's motion for nonsuit. The court separately declined so to charge each of them, for the reason that by the view he had taken of the case it became unnecessary to do so, and defendant's counsel separately excepted to each refusal. Defendant's counsel also requested the court to charge the jury that the only obligation this company was under was to carry the plaintiff to Wells Bridge by a train stopping there according to the time table. The court declined so to charge, and defendant's counsel excepted. Also, that if he was on the train that did not stop at Wells Bridge, and refused to pay his fare to the next stopping place, the conductor had the right to put him off on his refusing to pay such fare. The court declined so to charge, and defendant's counsel excepted. The jury rendered a verdict in favor of the plaintiff for eighty-five dollars.

*N. C. Moak,* for the defendant.

1st. The company had a right to adopt the time table and regulate the points at which, and the circumstances under which, their trains should stop. (1 Redf. on Railways, 3 ed., 91, 92; 3 Parker's Crim. R., 238; 2 N. Y., 126; 14 Barb. S. C., 590; 2 Kent's Com., 601, and note.)

2d. The regulations of this train were duly advertised, and it was the plaintiff's business to find out what they were. He must look out at his peril if he is desirous of going to a particular station, and get on a train that stops there. (1 Redf. on Railways, 3 ed., 101, 6n; *Johnson* v. *Concord, etc.,* 46 N. H., 213; *Cheney* v. *Boston, etc.,* 11 Metc., 123; Redf. Railway Cases, 95.) In this case the evidence establishes that

the plaintiff had express notice that this train did not stop there, but the posted notice was sufficient. (6 Duer, 523, 529; 24 N. Y., 600; 2 Redf. on Railways, 255.)

3d. The purchase of a ticket for Wells Bridge did not create a contract on the part of the company to carry him there by any train that passed there, but by such train as should stop there. (2 Hill on Torts, 2d ed., 384; *Roe* v. *Birkenhead*, etc., 7 Eng. L. and Eq., 546.) It is the constant practice to exclude passengers from freight trains, and to run some trains that stop at but few stations, thus avoiding delay and promoting the comfort of those having long journeys to perform. This cannot be done if the law is as it was held at the circuit that any passenger may dictate the place where any train shall stop.

4th. The station agent could not have made any contract as to the running of the train that would be binding upon the company. (2 Redf. on Railways, 258; *Hurst* v. *Great Western*, etc., 19 Com. B. N. S.; 15 Eng. L. and Eq.; 310 Addison on Torts, 3d Eng. ed., 448.)

5th. The plaintiff was, therefore, wrongfully on the train, and it was the right and duty of the conductor to remove him. He had no right to ride for the distance he had paid, for he had no right whatever on the train, unless he was willing to pay to the next stopping place for that train. (6 Duer, 523; 24 N. Y., 600; 3 Park. Cr. R., 238–240; 15 Gray, 20.)

6th. In any event, the company was not liable for vindictive damages, nor were they liable for the willful and malicious acts of their conductor. (2 Redf. on Railways, 272, 274.)

*L. L. Bundy*, for the plaintiff.

1st. The ticket given by the defendants' agent constituted a contract, by which the defendants were in law bound to carry the plaintiff to Wells Bridge, and allow him to get off there. (2 Redfield on Railways, 218; *Wells* v. *The N.*

*Y. Central R. R. Co.*, 24 N. Y., 181; *Bissell* v. *The Michigan Southern R. R. Co.*, 22 N. Y., 258; *Illinois, &c. R. R. Co.* v. *Copeland*, 24 Ill., 332; *Barker* v. *Coflin*, 31 Bar., 556.)

2d. In any event, the conductor had not the right to eject the plaintiff from the cars at the time he did. He had, in any view of the case, the right to ride the distance for which he had paid. He was legally and rightfully on at the time, and could not be rightfully put off at that time. In other words, he had the legal right to ride to Wells Bridge, and had until then to elect whether he would pay the additional amount demanded, or would be ejected, or get off voluntarily. This was a regular passenger train, and he was a passenger with a ticket bought and paid for, and had the legal right to ride as far as that ticket would carry him. (*Pier* v. *Finch*, 24 Barb., 514). " A railroad company is bound to stop its train at an intermediate station long enough to allow passengers intending to stop there to alight." (*Penn. R. R. Co.* v. *Bilgone*, 32 Penn. State R., 292).

3d. The theory of the defence was, and they proved, that this train did stop at Wells Bridge in either of three contingencies: 1. If there were passengers aboard from Binghamton to Wells Bridge; 2. If there were passengers at Wells Bridge for Albany; 3. Under all circumstances, if the train was flagged. Now, although the conductor could know whether he had a passenger from Binghamton for Wells Bridge, he could not know, and did not know at the time he ejected the plaintiff, whether there would be passengers at that station to go to Albany, in which event, by the uncontradicted evidence in the case, he knew the train would stop. Nor could he know but he would be flagged from some other cause, and thus stop. Now, if the train did stop, then the plaintiff had just as good a right, both to get on at Unadilla, and get off at Wells Bridge, as any passenger who had started from Binghamton. We insist, therefore, that the conductor could not guess that his train would not stop, and therefore, that the plaintiff would have to be carried further

than he had paid fare, nor is there a particle of evidence in the case whether this train did or did not stop at Wells Bridge. The judge was therefore entirely correct in deciding that the plaintiff had the right " to get upon the train and take the chances," &c. (*Hart* v. *Southern R. R. Co.*, 40 Miss. R., 391; *Edgerton* v. *N. Y. and H. R. R. Co.*, 35 Barb., 193, 389, affirmed in 29 N. Y., 327; *State* v. *Overton*, 4 Zabr., N. J., 435.)

4th. The right of the defendants to adopt reasonable rules and regulations is not questioned, nor but what the regulation in question (time table) was one of that description, if it had been acted upon by the defendants themselves. But it is apparent that this train was a kind of " free and easy," really, and in fact, stopping at Wells Bridge, as a general rule, when any one wanted to get off or on at that station. But the plaintiff violated no " rules " or " regulations " of the defendants. They had no " rules " or " regulations " that a passenger should not or could not buy a ticket for Wells Bridge, or ride there in case the train did not stop ; and if any one violated any rules or " regulations," it was their own agent. He knew them. We did not. He knew whether he could sell us a ticket to go on that train. We did not. He assumed to sell one and took pay for it, and defendants are bound by the act. (*Porter* v. *N. Y. Central R. R. Co.*, 34 Bar., 353; 2 Red. on Railways, 109; *Wheeler* v. *The Railroad*, 23 Cal., 52; *Carter* v. *Peck*, 2 Sneed, 203; *Rogers* v. *Long Island R. R. Co.*, 38 How., 289.)

5th. It makes no difference whatever with the rights of the parties if it be conceded that the plaintiff knew the contents of the time table.

1st. He also knew that it was not acted upon, and that trains did stop at Wells Bridge.

2d. His knowledge on that subject, if he possessed all that the agent did, would not affect his rights in the least. When the agent sold him the ticket, just on the approach of the train, he knew that the plaintiff intended to go on that train. He must have known it, and it was in fact and legal effect a

contract to carry on that train, and not on one five hours later, and that 'they were bound as matter of law to stop at Wells Bridge and deliver the plaintiff there and on that train. How could knowledge in the plaintiff that this train was advertised not to stop at this station affect him, when at the same time he knew it did stop at least a portion of the time, and that if he had a ticket they would let him off? If the defendants were bound by the contract embodied in the ticket, then it is obvious that any notice in the plaintiff did not release the defendants from the duties and obligations imposed upon them, viz.: To carry and safely deliver the plaintiff at the station to which he had paid, and they had contracted to carry him. (*Ohio R. R. Co.* v. *Muhling*, 30 Ill., 9; *Dorr* v. *Steam Nav. Co.*, 11 N. Y., 485, and cases cited.)

4th. All the right that the defendant or their conductor had to put the plaintiff out of the cars is derived from the statute, which provides: "If any person shall refuse to pay his fare, it shall be lawful for the conductor, &c., to put him and his baggage out of the cars, using no unnecessary force, at any usual stopping place or near any dwelling-house, as the conductor shall elect on stopping the train." (3 Statutes at Large, 634, § 35.) The defendants were bound to show a strict compliance with this statute. This they failed to do in two respects.

1st. The plaintiff had paid his fare, and had the evidence of the fact, viz.: the ticket which he exhibited to the conductor. It is not a "refusal" to pay when he has once paid. Railroad acts are to be construed strictly. (Broom's Legal Maxims, 580–582.)

2d. It will not be pretended that the plaintiff was put off at any "usual stopping place," and it was, therefore, incumbent on the defendants to show that it was "near a dwelling-house." This the case wholly fails to show. All the evidence there is as to the place is as follows: "I got off not far from William Cole's farm." Now this proof that he got off (was put off) "not far" from a farm, is no evidence that it

was "near any dwelling-house," for there is no evidence that there was a "dwelling-house" on the "farm," or "near" it. Statutes are to be construed so as to give effect to all the words therein. (Potter's Dwarris on Statutes, 184 to 188, Notes 6, 7, and 8, and cases cited; Broom's Legal Maxims, 548–563.) It may be claimed that this question was not distinctly raised on the trial. It was sufficiently raised when the court was asked to rule that the "plaintiff was entitled to recover on the undisputed facts." But if this question was not raised below, it may be here, to sustain the verdict. (*Grant* v. *Morse*, 22 N. Y., 323; *Lee Bank* v. *Satterlie*, 17 Abb., 6.) Every intendment will be made to sustain the verdict. (*Carman* v. *Pultz*, 21 N. Y., 547; *Hoyt* v. *Hoyt*, 8 Bosw., 511.)

7th. There was no error in the charge on the question of damages.

1st. The charge as to what constitutes actual damages was correct. (*Morse* v. *Auburn and S. R. R. Co.*, 10 Barb., 621.)

2d. The rule laid down as to exemplary damages or "smart money," and the refusal to limit the recovery to actual damages was also correct. (Sedgwick on Damages, 38, 98, 454; 1 Red. on Railways, 551; *Ives* v. *Humphrey*, 1 E. D. Smith, 196; *Taylor* v. *Railway*, Albany Law Journal, vol. 3, No. 26, page 498; 2 Red. on Railways, 231; *Hague* v. *Providence and Worcester Railway*, 3 Rhode Island R., 88.)

3d. If this part of the charge was erroneous, it did no harm, as it is apparent that no smart money was given.

*Mr. Moak*, in reply: The burden of proof to show a valid cause of action was upon the plaintiff. As a rule the train did not stop at Wells Bridge. If it stopped there on the occasion in question, the plaintiff should have proved that fact in order to show he could have got off there. The conductor had a right to settle the question upon the facts which existed to his knowledge when he came to the plaintiff for his fare. Those facts plaintiff could have ascertained of him before the train started, and have known whether he could rightfully get upon the train or not. If he could not learn that the train would

stop from the conductor, whose business alone it was to stop the train, he should have kept off of it. The station agent had no control over it, and no right to any. Again, if plaintiff had a right of action in consequence of not being put off near a dwelling-house, that also was a part of his cause of action, and the burden of showing it was upon him.

Present—MILLER, P. J., PARKER and DANIELS, JJ.

By the Court—A new trial is granted upon the ground that the plaintiff had no right to take the train he was removed from, without paying his fare to the next station at which it was to stop, as it did not regularly stop at the station he desired to ride to, and did not in fact stop there on the occasion in controversy, and for the additional reason that the recovery should not have exceeded the actual damages.

Ordered accordingly.