# Wytheville.

## SNOUFFER'S ADM'R v. H. HANSBROUGH.

### July 22, 1884.

1. PRACTICE IN CHANCERY—*Issues—New Trial—Rule.*—Where because of conflict of testimony an issue is directed, the solution whereof depends on credibility of witnesses, and the verdict is sanctioned by the trial court, the settled rule is, that the appellate court will consider not merely whether the evidence warrants the verdict, but also whether, upon the whole, further investigation is necessary to justice ; and though there may have been misdirection, or improper rejection of evidence, it will not grant a new trial, if on considering all the evidence, including that rejected, the verdict appears to be right.

2. IDEM—*Idem—Evidence.*—At trial of issue, whether vendee was induced to buy by vendor's misrepresentations as to boundaries, evidence of the value of the land at time of sale and since, is admissible, as tending to disprove imposition.

3. IDEM—*Idem—Instructions.*—At such trial, though instructions that vendee must be held to have had notice from the written contract of sale and the title papers therein referred to, that the purchased tract included 135 acres of mountain land, might not have been directly relevant to the issue, the solution whereof depended on the credit the jury attached to the witnesses, yet the instruction could not affect the verdict, and even if erroneous is no ground of reversal. *Powell & Wife* v. *Manson,* 22 Gratt. 192.

4. IDEM—*Idem—Idem—Answers.*—At such trial, instruction that jury shall weigh defendant's answer instead of merely the parts responsive to the bill, though rather broad, is not error for which the verdict will be set aside. *Danville Bank* v. *Waddill,* 27 Gratt. 451.

5. IDEM—*Idem—Instructions.*—Where at such trial, impartially had, the verdict could not have been different, had a certain instruction been given, the refusal to give the instruction is not error, for which the ver-

dict will be set aside. And the rule is the same where the court gives, in lieu of instructions asked for by a party, others substantially embodying the same ideas.

Appeal from decree of circuit court of Roanoke county, rendered 13th October, 1883, in the cause of Caleb Nininger, administrator of J. B. Snouffer, deceased, against Hiram Hansbrough and others. By agreement in writing, dated 10th June, 1868, G. W. Hansbrough, as agent for H. Hansbrough, sold to J. B. Snouffer "all of that certain tract of land situated in Roanoke county, known as 'Belle Grove,' and containing 777 acres, more or less, being the same land which was conveyed to said H. Hansbrough by G. W. McChesney and wife, by deed dated 19th of October, 1857, and of record in the clerk's office of the said county, for $25,000." That deed expressly described said tract as "including a mountain tract containing 135 acres." The purchaser had been shown the land by the agent, and had afterwards visited it twice—once alone, once in company with his son and brother. He had no communication with H. Hansbrough until the day of the sale. No representations were made to him by H. Hansbrough. The agent had shown him three boundaries, and as to the fourth, told him that the land ran up on the mountain far enough to make the tract contain 777 acres, more or less. And on one of his visits Snouffer was up the mountain several hundred yards above its base at the spring whence water was piped to the mansion. H. Hansbrough had purchased the land of McChesney without having it surveyed, and thus sold it to Snouffer. After the lapse of ten years, during which Snouffer had sold about half of the land for $15,666, the part retained being in his opinion as valuable as that sold, when he had paid all of the purchase money without objection or complaint, except about $1,374, he refused to pay that balance and enjoined the sale advertised under the trust deed, on the ground that H. Hansbrough had induced him to buy the land by misrepresentations made to his damage as to

the mountain boundary, whereby, though he had been induced
to believe he had bought no mountain land, yet 107 acres of
valueless mountain land had been put on him, for the price
whereof, at the average price per acre of the 777 acres, to-wit:
about $3,317, with interest from the day of sale; he claimed com-
pensation.

The circuit court, after considering the depositions and the
argument of the counsel, dissolved the injunction. Snouffer ap-
pealed. This court, considering that there should have been
an issue out of chancery (though none had been asked for) to
enable the jury to decide upon the credibility of the witnesses,
for this cause alone, reversed the decree complained of and re-
manded the case. The issues directed to be tried are set out in
the opinion of Hinton, J.

At the trial the jury rendered their verdict on both issues in
favor of the defendant, H. Hansbrough; that is, decided (1) that
there had been no misrepresentations, and (2) that there was no
damage done Snouffer. The circuit court approved this verdict
and dismissed the bill with costs. From this decree an appeal
was allowed to Nininger, administrator of said Snouffer. At
the trial of said issues, on the motion of the defendant, the cir-
cuit court gave the following instructions, to-wit:

(1) "The court instructs the jury that the contract made 10th
June, 1868, by H. Hansbrough and J. B. Snouffer for the sale
of the tract of land in controversy in this suit, describes said
land as being the same land which was conveyed to said Hans-
brough by McChesney and wife by deed dated 19th October,
1857, and of record in the clerk's office of Roanoke county, and
that said deed describes the said tract as including a mountain
tract of 135 acres, and that the said Snouffer must be held
to have had knowledge of that deed and of all it contains,
and of the fact that the said tract included the said moun-
tain tract of 135 acres when the contract of sale was made.
But in deciding the issues in this cause, it is the province and
duty of the jury to consider all the evidence that has been offered

before them both by the plaintiff and the defendant, whether written or oral.

(2) "The burden of proof of the issues before the jury rests on the plaintiff, J. B. Snouffer, and it is the duty of the jury to weigh well all the evidence before them, as well the written contract of sale and the deeds and the answer of H. Hansbrough and the depositions of the absent witnesses, as the testimony of the witnesses who testified in the presence of the jury, and if, from all the evidence, the jury do not believe that it has been clearly proven that the defendant, H. Hansbrough, did, before the sale, misrepresent unto J. B. Snouffer, as charged in his bill, that the line of the tract of land ran only to the foot of the mountain, that the tract embraced no mountain land, and no land which was not tillable, and no land on which a four-horse wagon could not run or be turned, and also that the said J. B. Snouffer was induced by these misrepresentations, or by the fraud of H. Hansbrough, or his agent, to purchase said tract of land, then the court instructs the jury to find for the defendant. But the court further instructs the jury, that if they believe from the evidence that John B. Snouffer was induced to make the purchase of the land by the misrepresentations of H. Hansbrough as to either of the matters set forth in the instruction of the plaintiff, whether these misrepresentations were made wilfully or through ignorance, then they must find for the plaintiff in the first issue."

These instructions were given by the court, to which the plaintiff excepted.

The plaintiff moved the court to instruct the jury as follows:

(1) "If the jury believe from the evidence in this cause that the plaintiff could not know where the lines next to, or on the mountain were from the title papers, and that he had at the time no means of knowing where those lines were except from the defendant himself, and if the jury believe from the evidence that the defendant stated to the plaintiff that the

lines only ran to the foot of the mountain, or words to that effect, and that such statement was material and was relied upon by the plaintiff—and if the jury believe that such statement, if made, was not true, but that the lines in fact ran as shown by survey made by James E. Day, then they must find for the plaintiff on the first issue, and this whether the defendant knew such statement to be false or not."

This instruction the court refused to give, and the plaintiff excepted. The plaintiff then moved the court to instruct the jury as follows:

(2) "Though the purchaser is affected with notice of the recitals of the title deeds referred to, yet if they believe from the evidence the seller made false representations of a material fact, constituting an inducement to the contract, which was different from such recitals, then the purchaser had the right to rely upon such representations notwithstanding such recitals."

This instruction the court also refused to give, but, in lieu thereof, instructed the jury as follows:

"The court instructs the jury that a false representation of a material fact, constituting an inducement to the contract, on which the purchaser had the right to rely, would entitle the purchaser to relief, although the party making the representation was ignorant as to whether it was true or false, and the real inquiry is not whether the vendor knew the representation to be false, but whether the representation was false and the purchaser believed it to be true, and was misled by it in entering into the contract."

*Waller R. Staples, R. H. Logan,* and *John E. Penn,* for the appellant.

The circuit court erred:

1. In excluding evidence of certain representations of appellee, which, though made after the sale, yet were corroborative of similar statements made before.

2. In not excluding evidence of the prices at which the appellant's intestate sold parts of Belle Grove—Snouffer was entitled to the full benefit of his bargain with Hansbrough.

3. In admitting Thompson's testimony as to the value of Belle Grove at the time of the sale and since.

4. In giving the instructions asked for by the defendant, and in refusing those asked for by the plaintiff.

(1.) The defendant's first instruction was improper, because the doctrine of constructive notice is applicable only to controversies between *third* parties and *the vendee,* and not to controversies between the vendor and the vendee. See *Champlin* v. *Laytin,* 6 Paige (N. Y. Rep.) 189, 203, where the Chancellor said: " For certain purposes and where the equitable rights of certain persons are concerned, it has been found necessary by this court to hold a purchaser chargeable with constructive notice of all the facts communicated to his attorney or agent for the purchase; and that notice of the existence of a deed was good constructive notice of the contents of the deed itself, especially if it was one of the deeds under which the purchaser derived his title to the premises. But this equitable rule as to constructive notice has no reference to controversies between the vendor and vendee in relation to their own rights." See also 2 Pomeroy Eq. 60, where the same is cited.

(2.) The defendant's second instruction was improper, because it allows the jury to weigh as evidence for the defendant his *whole* answer, whereas only such parts thereof are evidence for him as are responsive to the plaintiff's bill, and the answer contains much affirmative matter calculated to influence the jury.

(3.) The first instruction asked for by the plaintiff was proper and bore directly on the point in controversy, whilst,

(4.) The second correctly propounded the law, and there was evidence tending to support it. Hence it should have been given as asked. *B. & O. R. R. Co.,* v. *Lafferty,* 14 Gratt. 478; *Hopkins, Bro. & Co.* v. *Richardson,* 9 Gratt. 485.

*G. W. & L. C. Hansbrough,* for the appellee.

1. The evidence excluded was of declarations made by defendant *after* the sale. They could not have operated on the plaintiff's mind and induced him to buy, and hence were irrelevant to the issues.

2. The evidence not excluded, of the prices of the parts of Belle Grove which plaintiff had sold, had already gone to the jury in the bill and answer and in the depositions of the plaintiff's witnesses, and moreover tended to show that he had not been defrauded.

3. The same is true as to the admission of Thompson's testimony.

4. The instructions asked for by the defendant were properly given by the court.

(1.) The first tells the jury that the contract of sale, dated 10th July, 1868, describes the land sold as Belle Grove, and as the same land that was conveyed to H. Hansbrough by McChesney and wife by deed of 19th October, 1857, of record in the clerk's office of Roanoke county, and that said deed describes the same land as including a mountain tract of 135 acres, and that plaintiff, Snouffer, must be held to have had knowledge of that deed and of all it contains, &c.

(A.) The interpretation as well as the construction of a written instrument is for the court not for the jury. It is for the court and not for the jury to ascertain the meaning and determine the effect of documentary evidence. See 1 Greenleaf on Ev., sec. 277, 491 ; 2 Minor's Institute, 725–756, 877 ; *Keel* v *Herbert,* 1 Wash. 203 ; *Fisher* v. *Duncan,* 1 H. and M. 563 ; *Fowler* v. *Lee,* 4 Munf. 473 ; *Dabney* v. *Taliaferro,* 4 Rand. 256 ; *McKinley* v. *Ensell,* 2 Gratt. 333 ; 1 Starkie on Ev. 525 ; *Herbert* v. *Wise,* 3 Call, 239 ; and *Johnson* v. *Jennings,* 10 Gratt. 11.

(B.) Was not Snouffer, the purchaser, bound to know all that that written contract of 10th June, 1868, which he signed and sealed could inform him of either by its recitals or its references ?

See *Burwell* v. *Fauber*, 21 Gratt. 446, where the unanimous court, through its venerated president, says : "A purchaser must look to the title papers under which he buys, and is charged with notice of all the facts appearing upon their face, or to the knowledge of which' anything there appearing will conduct him. He has no right to shut his eyes or his ears to the inlet of information, and then say he is a *bona fide* purchaser for value without notice." And so in *Long* v. *Weller*, 29 Gratt. 349, Burks, J., says : "Wherever inquiry is a duty, the party bound to make it is affected with knowledge of all which he would have discovered had he performed his duty." See also *Wood* v. *Krebbs*, 30 Gratt. 708, where a purchaser was held bound to know all which he could have learned by examining the record of a suit which was referred to in the deed under which he claimed the land.

(C.) But it is contended by the appellant's counsel that the doctrine of constructive notice, as laid down in *Wood* v. *Krebbs*, and in the cases there cited, is not applicable to controversies between vendor and vendee. Here let it be noted that in not one of the numerous cases on that subject, decided by this court, is there the slightest hint of any such qualification of the doctrine of constructive notice. Nor is there, we venture to assert, any authority whatever for such qualification, except the case of *Champlin* v. *Laytin*, as reported in 6 Paige, 189, 203, and cited by appellant's counsel, which, however, is the decision of "the supreme court" of New York (not a court of final resort). From that decision there was an appeal to the "court of errors," where, it is true, the decree appealed from was affirmed, but on a different ground. As so finally decided, see *Champlin* v. *Lay tin, as· reported later*, in 18 Wend. 407. This is the case in brief: Champlin had mapped a street on his land, and granted lots to Whittemore, bounded on said street. That created an irrevocable servitude, and dedicated the street to the public. Then he sold parts of the street as mapped to Laytin, and did not tell him of the Whittemore deed, but told him the title was

perfect, that he had done nothing to encumber or impair it, and that if the street was ever opened the city would have to pay full value for the lots. The street was opened. The city, by reason of the dedication created by the Whittemore deed, did not pay for the lots. Champlin tried to foreclose Laytin's mortgage. Laytin filed his cross-bill against Champlin to have the mortgage cancelled, and the purchase money already paid refunded, which, upon hearing, the court accordingly decreed. The court of errors said that it was not a case for applying the doctrine of constructive notice; that the Whittemore deed was not one of the links in the chain of title which Laytin was investigating; that he could not be charged with constructive notice of its contents, but that Laytin had purchased under a misrepresentation, which, however innocently made, operated as a fraud on him. Pomeroy merely quotes from the opinion of the vice-chancellor in 6 Paige, 189–203, but makes no comment, and no reference to the opinion of court of errors in the same case in 18 Wend. 407. Analyzing this decision it fully confirms the true doctrine as laid down in *Le Neve* v. *Le Neve,* and reported in 2 Leading Cases in Equity, page [59*], as follows: "The same principle is applicable as between vendor and purchaser in cases of sales of property; thus, although where a deed is simply referred to in particulars of sale, without mentioning its contents, and the deed can be examined by the purchaser, he will be bound by everything contained in the deed; but if the vendor, instead of referring the purchaser to the deed to ascertain its contents, himself states what the contents are, the purchaser is not bound to examine the deed, but may reasonably trust to the representation of it contained in the particulars of the sale as being a correct statement of its contents. *Cox* v. *Coventon,* 31 Beav. 378." In case at bar, the contract of sale merely refers to the McChesney deed, which was accessible to the purchaser.

(D.) The last clause of this instruction opened the door for all the appellant claims and parol proof of misrepresentations

by appellee inducing the purchase, left free to override in the mind of the jury the effect of the title papers, and is unnecessarily liberal.

(2.) The defendant's second instruction allows the jury to weigh his answer, not expressly confining them to such parts as respond to the bill. The criticism makes the instruction say " whole answer." But looking at the word "answer" alone, it would naturally import a response to allegations or interrogatories which are its legal significances as respects its force as evidence, and the jury was hardly misled to the plaintiff's injury by the inadvertence; especially as the answer contains nothing of any consequence, except in answer to the bill.

5. As to instructions of plaintiff—

(1.) There are several faults in the first.

(A.) It directs the jury to construe as certain the meaning and determine the effect of written documents. They are to determine whether plaintiff could know where the lines were from the title papers.

(B.) An instruction must be appropriate to the evidence. There is nothing in the evidence to show that plaintiff had *no* means of knowing where the lines were *except* from the defendant. On the contrary, the evidence shows that plaintiff did not rely on obtaining knowledge of '· Belle Grove" from defendant, but that he had three months before he ever saw defendant visited the place, and subsequently visited it twice, never in company with the defendant; that he ascended the mountain to the spring, questioned the tenant on the place, and of course might have inquired of the neighbors as to the boundary. There was certainly no obligation on the vendor to designate to the purchaser the exact location of the mountain boundary. His only obligation was not to mislead him.

(C.) When an instruction undertakes to give part of the evidence, it should give all, else the singling out of parts thereof must necessarily appear to the jury to give the parts so singled out prominence that will mislead. That would in effect be to

instruct the jury as to the weight of the evidence. The evidence was quite contradictory, which enhances the objectionableness of the instruction in singling out specific parts thereof. See *Brown* v. *Rice*, 76 Va. 629.

(2.) As to the second instruction asked for by the plaintiff, the instructions which had already been given on the defendant's motion, and that given by the court of its own motion, covered the ground, and distinctly directed the attention of the jury as to what they were to look to in deciding the issues.

In conclusion, this court, *ex mero motu*, referred the issues in this case to a jury to decide on the veracity of the witnesses between whom there was irreconcilable conflict. The jury decided for the defendant. The chancellor approved the verdict. Here, then, is appropriate the language of this court when in *Almond* v. *Wilson*, 75 Va. 626, it says: "Under such circumstances it would be an unusual exercise of the appellate jurisrisdiction for this court to reverse the decree of the circuit court. Such a course would be in violation of the practice and rule of this court from the foundation of the government."

HINTON, J., delivered the opinion of the court :

Upon the former appeal in this case, which will be found reported in Va. Law Journal for 1881, at p. 652, under the style of *Snouffer* v. *Hansbrough*, Judge Christian, in delivering the opinion of this court, said : "The bill charges fraud and misrepresentation. The answer, which to this extent is directly responsive, explicitly denies those charges. If we look to the evidence of the complainants *alone*, the charge of fraud and misrepresentation is clearly made out. On the other hand, if we look to the evidence of the defendants (independent of the answer as evidence), the transaction will appear to be fair, and free from all fraud and misrepresentation. On all the material facts the evidence is contradictory and conflicting to the last degree. The decision of the case, therefore, depends almost entirely on the credibility

of the witnesses. If full credit be given to the complainant's witnesses his case is clearly made out; if, on the other hand, full credit is given to the defendant's witnesses the defence is clearly established."

The learned judge thereupon proceeds to reverse and remand the cause to the lower court, with instructions to award the issues directed by this court in its decree. And the propriety of this action, as we have heretofore repeatedly held, cannot be questioned or inquired into upon this appeal. Upon the general question, however, as to when an issue out of chancery should be awarded the following cases may be consulted. *Smith* v. *Betty,* 11 Gratt. 753 ; *Mettert* v. *Hagan,* 18 Gratt. 231 ; *Beverley* v. *Walden,* 20 Gratt. 157 ; *Magill* v. *Manson,* 20 Gratt. 527 ; *Powell & Wife* v. *Manson,* 22 Gratt. 177.

The issues directed to be tried by a jury were:

1st. " Whether the plaintiff, John B. Snouffer, was induced to purchase the land, in the bill and proceedings mentioned, in consequence of any fraud or misrepresentation of the defendant, Hiram Hansbrough, or his agent, as to the boundaries of said land.

2d. "If so induced, what damages has the plaintiff sustained in consequence of such fraud or misrepresentation ; on the trial of which issues the said Snouffer shall be plaintiff and the said Hansbrough defendant, and the former shall have the right to open and conclude."

A verdict was found for the defendant upon both issues, and the chancellor having decreed in accordance therewith, this appeal was thereupon allowed.

In cases of this character, where there is an utterly irreconcilable conflict between the testimony of the plaintiff and defendant; where the proper solution of the controversy depends upon the credibility of the witnesses ; where the cause has been remanded solely with the view to obtain the opinion of the jury as to some paramount fact necessary to be ascertained before a

decree in accordance with the justice of the case and the rights of the parties can be rendered; and where the verdict which has been found has received the sanction and approval of the trial court, the appellate court will sustain the decree, unless it can see from the record that something was done, or omitted to be done, on the trial which might have improperly influenced the jury in arriving at the verdict, or at least that it is doubtful whether, under the facts of the particular case, such a verdict should have been rendered at all. In every such case it would not only be manifestly unjust to the individual, but at war with a wise and salutary course of legal procedure to send the case back and to subject the party prevailing to the hazard and uncertainty of another trial, unless it should be apparent to the court, from the record, that there had been at least a probable miscarriage of justice, owing to some illegal advantage which he may have obtained on the trial. In *Powell and Wife* v. *Manson*, 22 Gratt. 177, Judge Staples, delivering the unanimous opinion of the court, said: "The bill of exceptions * * * states all the oral evidence adduced at the trial. This court, having before it this evidence, all the depositions and exhibits read at the hearing, is competent to decide whether the purposes of justice require another trial to be had. The rule in such cases is well settled. The court will consider not merely whether the evidence adduced before the jury warrants the verdict, but also whether, having regard to the whole case, further investigation is necessary to attain the ends of justice. And although there may have been a misdirection, or evidence may have been improperly rejected, it will not grant a new trial if the verdict appears to be right upon a consideration of all the evidence, including that which was rejected. 2 Dan. Ch. Pr., new edition, page 1124, and cases there cited." With these observations, and without stopping to comment upon the objections made by the appellant in his petition to the refusal to exclude the answers to certain questions, and the rejection of the answers to certain others,

upon which no reliance was placed at the bar, and which are obviously untenable, I come to the next exception of the appellant, which is that the testimony of the witnesses, James R. Thompson and others, relative to the price and value of the land at the time of the sale and since, as set forth in the plaintiff's second bill of exceptions, was improperly admitted. And this, too, I shall dismiss with this single remark: that as that testimony admittedly sheds some light upon the actual value of the land, and, therefore, to a certain extent tends to negative the idea that imposition was practiced upon the plaintiff, it was relevant, and was, therefore, properly admitted. This brings me to a consideration of the main grounds upon which the application for the reversal of the cause was rested.

And in the first place, it is argued for the appellant that the court erred in giving the first instruction asked for by the defendant, which asserts in effect the proposition that the plaintiff must be held to have had notice from the written contract of sale and the title papers therein referred to, that the tract of land purchased by him of the defendant included 135 acres of mountain land. Now, conceding, *argumenti gratia*, that this instruction was not directly germane to the issue prescribed by this court, and might, therefore, have been well refused, yet it by no means follows that the decree must be reversed on that account. The fundamental inquiry, to which the jury had been locked up and confined by the decree of this court, was whether the plaintiff had been induced to purchase the tract of land, known as "Belle Grove," in consequence of the fraud or misrepresentation of the defendant, Hiram Hansbrough, or his agent, as to any one or all of the boundaries of said tract. And the answer to that inquiry was plainly dependent, as the opinion of this court shows, upon the credit which the jury should attach to the witnesses on the respective sides. Under these circumstances this instruction was probably regarded by the jury as beside the mark, and certainly could not have had any appreciable weight

in moulding their verdict. It would, therefore, constitute no ground for a reversal of a judgment at law, see *Colvin* v. *Menefee*, 11 Gratt. 87 ; *Kincheloe* v. *Tracewell*, Id. 589 ; *Bell* v. *Alexander*, 21 Gratt. 1, and therefore certainly ought not to be held to be a cause for the reversal of the decree here. *Powell and Wife* v. *Manson*, 22 Gratt. 177.

The appellant's next exception is to the second instruction given for the defendant. While it may be admitted that this instruction is rather broad, in that it allows them to weigh the answer of the defendant instead of merely the parts responsive to the bill, nevertheless, as we can perceive from a reading of the answer nothing that in our judgment could have unduly biased the minds of the jury against the plaintiff's case, it cannot be held to be an error for which the decree should be reversed. *Danville Bank* v. *Waddill*, 27 Gratt. 449 ; *Powell and Wife* v. *Manson, supra.*

The next assignment of error is that the court refused to give instruction No. 1, as requested by the plaintiff. This instruction, if we assume that it was the duty of the defendant to furnish the plaintiff with actual knowledge of the exact location of the mountain lines, seems to propound the law correctly ; and my first impression was that the refusal of the court to give it necessitated the reversal of the decree. But more mature reflection has convinced me that such is not the case. The real issue, as I have before had occasion to observe, was whether there had been any fraud or misrepresentation on the part of the defendant which had occasioned the sale, and that issue, as we have every reason to believe, has been fairly and impartially tried, and I cannot say that upon another trial under this instruction that a different verdict could be rightfully found.

As to the refusal of the court to give the plaintiff's instruction No. 2, which constitutes the last assignment of error, it seems only necessary to say that such portions of it as were relevant to the plaintiff's case were substantially embodied and presented

in the instructions which the court gave, and, therefore, the refusal to give it in the form in which it was asked can furnish no just cause of complaint under the circumstances of this case.

I have thus gone over this case and such questions of law as seem to me to be involved in it, and find no ground for reversing the decree of the circuit court of Roanoke county; it must therefore, be affirmed.

LEWIS, P., dissented.

DECREE AFFIRMED.