ST. LOUIS SOUTHWESTERN RAILWAY COMPANY v. V. O. CAMPBELL.

Decided June 28, 1902.

**1.—Carriers of Passengers—Degree of Care.**

In a case where plaintiff's wife and child were carried by the defendant railway company in an unheated car, in cold weather, without water, and the wife compelled to stand and hold the child, whereby both were made sick, the charge of the court properly defined the degree of care which it was defendant's duty to have used as "that high degree of care which would have been exercised by very cautious, prudent, and competent persons under similar circumstances."

**2.—Same—Through Train—Duty to Stop.**

A charge that if defendant accepted plaintiff's wife as a passenger without protest, it became its duty to stop the train at her station, although it did not customarily stop there, was error, since the fact that she was so received, and that she did not know the train did not stop at her station, would not authorize a recovery of damages for failure to put her off there, unless it was further shown that she exercised ordinary care to ascertain that the train she took was the proper one.

Appeal from Hunt. Tried below before Hon. H. C. Connor.

*E. B. Perkins, Geo. S. Perkins,* and *D. Upthegrove,* for appellant.

*Evans & Elder,* for appellee.

TEMPLETON, ASSOCIATE JUSTICE.—Campbell sued the railway company to recover damages for personal injuries to his wife and medical expense and doctor's bills incurred for his child, alleging that in December, 1899, he bought an excursion ticket of appellant entitling his wife to travel from Neyland, Texas, to a point in Alabama and return; that his wife boarded one of appellant's trains, taking the child with her; that the coach in which she was compelled to ride was crowded and that she could not get a seat, but was forced to stand and hold the child in her arms; that the coach was not provided with drinking water, and was not heated, though the weather was cold; that his wife and child were made sick as a result of such treatment, causing the former to suffer greatly and occasioning considerable expense for medicines and doctor's bills. He obtained judgment on a trial before a jury and the company has appealed.

The court instructed the jury that it was the duty of appellant in this case to use that high degree of care which would have been exercised by very cautious, prudent, and competent persons under similar circumstances. Complaint is made of this paragraph of the charge on the ground that the degree of care stated is only required of carriers of passengers with reference to matters of transportation about which the risk to the hazard is very great, such as the construction and maintenance of the roadbed, the procurement, maintenance, and inspection of equipment, and the employment of prudent, cautious, and experienced persons to operate its trains, and does not apply where the duty to be

performed appertains to one of the common and simple conditions of life, which is well understood and can be performed by anyone of ordinary intelligence and experience, and where the mere comfort and convenience of the passenger is involved. We are of opinion that the objection to the charge is not well taken. The degree of care required is fixed by the existence of the relation of carrier and passenger, by the character of the danger to which the passenger is exposed, and by the exclusive control by the carrier of the agencies by which the danger can be averted. Where the life and health of a passenger is at stake, the care to be exercised is such as would have been used by very cautious and prudent persons. The assumption of appellant that when a passenger is compelled to ride in an unwarmed coach in inclement weather, the risk is not great and only his comfort and convenience is involved, is unwarranted. Such exposure may result in sickness causing physical pain and mental suffering and possibly death. Where such serious consequences are to be apprehended, the high degree of care required by the charge must be exercised. The fact that the means of avoiding the injury are simple and can be easily applied does not affect the degree of care which should be used, but only renders less difficult the discharge of the duty which the carrier owes to the passenger. The exact question here considered appears not to have been directly decided, but the rule given in the charge has been extended beyond the limits set up by appellant. Railway v. Shields, 9 Texas Civ. App., 652.

On the return trip, the train on which Mrs. Campbell was riding did not stop at Neyland, the place of her destination, and she went past that station and on to Greenville, where she left the train. Appellee claimed damages on account of his wife not being permitted to get off at Neyland. He requested a special charge which was given by the court and which reads as follows: "While the law recognized the right of a railway company to make reasonable rules and regulations as to the running of its trains, and it has the lawful right to run certain trains that do not stop at certain stations, yet if such company received a passenger on one of its trains whose destination is a certain station at which such train does not stop, and carries such passenger on such train without protest, and the passenger does not know at the time of boarding such train that it does not, under the rules of the company, stop at the destination of such passenger, then it is the duty of the railway to stop such train at the passenger's destination, whether under the rules of the company it is required to stop there or not. If, therefore, you find from the evidence before you that plaintiff's wife was in possession of a ticket sold her by the agent of defendant entitling her to passage from Fair Oaks, Ark., to Neyland, Texas, and if you find that in returning from Alabama plaintiff's wife was accepted on the train of defendant without protest, and that her ticket called for Neyland, Texas, as her destination, and that under the rules of the defendant company said train did not stop at Neyland; and if you further find that plaintiff's wife was not aware of this fact when she boarded such train; and if you

further find that those in charge of such train refused to stop the same at Neyland, Texas, in order that plaintiff's wife might alight therefrom, but carried her and her child on to Greenville; and if you further find that plaintiff's wife was sick or suffering with cold or cough, and that by reason of the failure of defendant to stop its train at Neyland, and the carrying of her by there and on to Greenville she became sick, and her cold and cough (if any) were made worse, then you will find for plaintiff such sum as will in cash compensate him for the increased suffering (if any) caused by carrying her by Neyland and on to Greenville; and if you should further find that by reason of carrying her by said station she suffered any mental anguish, then you should find for the plaintiff such additional sum as will reasonably compensate him therefor." It was shown that appellant runs two regular passenger trains a day each way over the line of its road on which Neyland is situated, two of said trains passing Neyland in the daytime and two at night; that the day trains stop at Neyland, but that under a rule of appellant the night trains do not stop except upon special orders; that such special orders are rarely given, the night trains generally passing Neyland without stopping; that the train in question had no orders to stop at Neyland. It was also shown that when Mrs. Campbell started on her trip to Alabama she got on a train at Neyland in the nighttime, the train having stopped there on that occasion on account of the excursion. Her ticket was over appellant's road from Neyland to Texarkana, over the road of the St. Louis Southwestern Railway Company from Texarkana to Fair Oaks, Ark., and over other lines from that point to Clanton, Ala. She returned by the same route. Just before the train on which she was riding reached Commerce, the station nearest her destination, she was informed by the conductor that the train would not stop at Neyland, and she was given choice between getting off at Commerce or going to Greenville, the first station beyond Neyland. She demanded that the train be stopped at Neyland, but the conductor refused to stop there, and she declined to get off at Commerce and went on to Greenville. The evidence does not show how she came to take the through train, and the record is silent as to whether her ticket had been taken up when the train reached Commerce, and as to whether the conductor, when he asked her to get off at Commerce, offered to provide her with transportation on the next train from that point to Neyland. We are of opinion that under this state of facts the giving of the special charge was error. Appellant has the right to operate through trains which do not stop at all stations, and the evidence is not such as to justify us in holding that the train in question did not belong to this class, but was such a train as was obliged to stop at all stations where there were passengers who wanted to get on or off the same. The charge requested by appellee in fact concedes that under the evidence this particular train was not compelled to stop at Neyland except on this or some similar occasion. The question then is, whether the circumstances of this case required a violation of the custom and rule. The charge under

consideration instructed the jury that the train should have been stopped at Neyland, notwithstanding the regulation, if Mrs. Campbell boarded it without knowing that it would not stop there and was accepted as a passenger without protest. The charge ignores the duty of Mrs. Campbell to exercise ordinary care to ascertain whether the train which she boarded was the proper train. That such was her duty is well settled. Beauchamp v. Railway, 56 Texas, 239; 5 Am. and Eng. Enc. of Law, new edition, p. 601, sec. 4. And in Railway v. Hassell, 62 Texas, 256, it was held that when a passenger by mistake takes a train which does not stop at his destination he may be ejected therefrom at any regular station. In that case it was shown that the ticket of the passenger had been taken up, but it does not appear whether, when he was forced to leave the train, his ticket was returned to him. So the charge is not only erroneous in that it relieved Mrs. Campbell of the duty to exercise ordinary care in taking the proper train, but was further defective in failing to state the law regarding the right of appellant, upon her mistake being discovered, to require her to leave the train at any regular station where the train stopped. Unless, after the mistake was discovered, appellant's agents did something which precluded them from enforcing the privilege they had of compelling her to leave the train short of her destination, then they were not bound to stop the train at Neyland. The charge declares that if she was accepted as a passenger without protest it became appellant's duty to stop the train at her station. The mere fact that she was permitted to ride on the train as a passenger to Commerce was not sufficient to require appellant to stop the train at Neyland in violation of its custom. In the Hassell case, supra, the traveler was declared to be a passenger and was accepted and treated as such by the conductor, yet it was held that the conductor had the right, thereafter, to compel him to leave the train before he reached his destination. It is unnecessary for us to determine whether if the conductor, when he requested Mrs. Campbell to disembark at Commerce, failed to provide her with transportation to Neyland on the next train, she thereby became entitled to be carried to her destination on the train on which she was riding, as the evidence does not raise the question. The burden was on appellant to show that Mrs. Campbell was on a train which, under a reasonable regulation it had theretofore adopted, was not required to stop at Neyland. If it made such a case, then it devolved on appellee to show the exceptional facts which rendered the regulation not enforcible against Mrs. Campbell.

For the error in giving the special charge, the judgment is reversed and the cause remanded.

*Reversed and remanded.*