St. Louis Southwestern Railway Company of Texas v.
W. R. Wallace.

Decided April 25, 1903.

**1.—Carrier of Passengers—Keeping Depot Open and Warmed.**

Where plaintiff, with his wife and children, upon alighting from the train at their stopping point at a late hour of a cold and inclement night, found the depot closed, and were exposed to the weather for some time while finding a stopping place in a small village, he was entitled to recover the damages resulting from such exposure, and a requested charge that the relation of carrier and passenger ceased when plaintiff left the train was properly refused. He was entitled, under the statute, to remain in the depot an hour if that were necessary to properly arrange for his departure. Rev. Stats., art. 4521.

**2.—Same—Through Train—Stopping at Station Not Scheduled.**

The agent who sold plaintiff his tickets pointed out the train and told him it went through to his destination, but there was evidence that en route the conductor informed him that that train, being the night one, did not stop at the point of his destination, and that the depot would be closed upon his arrival there, but plaintiff, although he could have stopped over for the next train at a town where accommodations were to be had, insisted on going through and being put off at his destination. Held, that it was error to refuse a charge submitting the issue thus raised, as plaintiff took the risk of finding the depot not prepared for his reception if such information was given and he insisted on going on that night.

Appeal from the District Court of Morris. Tried below before Hon. J. M. Talbot.

*Glass, Estes & King* and *E. B. Perkins,* for appellant.

*Hart & Mahaffey,* for appellee.

TEMPLETON, Associate Justice.—Wallace, together with his wife and other members of his family, took passage on one of the railway company's trains at Fort Worth on the evening of February 20, 1902, their destination being Omaha, Texas. The train reached Omaha between 4 and 5 o'clock the next morning. The depot at Omaha was not open, and Wallace was compelled to leave the station at once and seek shelter for himself and family elsewhere. The weather was cold and disagreeable, and Wallace and his wife suffered by reason of being exposed thereto. Wallace brought this suit to recover the damages resulting from such exposure, and on a jury trial obtained judgment from which the company has appealed.

The trial judge, in the instructions given to the jury, assumed the law to be that it was the duty of the company to have its depot open, lighted and warmed for one hour after the arrival of the train, and that the plaintiff was entitled to recover the damages sustained by himself and his wife which resulted from the failure of the company to perform such duty and which the plaintiff, in the exercise of ordinary care, could not have avoided. The defendant requested special charges, which were refused, to the effect that Wallace and his wife ceased to be

passengers when they left the depot, or so soon as a reasonable time for them to leave had elapsed after they alighted from the train, and that the company was not liable for any damages sustained by them after they ceased to be passengers. Error is assigned to the charge given and to the refusal of the special charges.

It was the duty of the defendant, under the provisions of article 4521, Revised Statutes, to have its depot "lighted, warmed and open to the ingress and egress of all passengers who are entitled to go therein, for a time not less than one hour before the arrival and after the departure of all trains carrying passengers." The facts of this case illustrate the wisdom of the statute. Wallace was accompanied by his wife, by another lady, and by several small children. They were strangers at Omaha, and arrived there late at night. The town was small, and it was a matter of some difficulty to secure shelter from the inclement weather. Had the depot been open they would unquestionably have been entitled to enter therein and to remain there until a reasonable time, not to exceed, perhaps, the time prescribed by statute, had elapsed in which to arrange for their departure from the station. An arriving passenger is not required to leave the depot instantly, without regard to the circumstances, but may remain at the station such time as is reasonable necessary to prepare for his departure. What is a reasonable time depends upon the facts of each case. It is clear that Wallace and those with him ought not to have been required, in view of the circumstances surrounding them, to leave the depot as soon as they alighted from the train. Some time was necessary to enable them to ascertain where accommodations could be secured, and they were entitled to remain at the station a reasonable time for such purpose. Until such time had elapsed, the duty imposed by the statute upon the company to have its depot open, lighted and warmed was absolute. The company could not deprive the party of the right to have the depot prepared for their reception, by violating its statutory duty, without incurring liability for the resulting damages. In other words, it could not terminate the relation of carrier and passenger by violating its duty and claim immunity from the consequences of its violation of duty because the relation had been severed before the consequence took effect.

We think the instructions given to the jury properly limited the plaintiff's right to a recovery. It was proven beyond controversy that the depot was closed; that time was necessary to secure suitable accommodations elsewhere; that Wallace and those in his charge were exposed to the weather on account of the failure of the company to have its depot open and warmed. The charge required Wallace to use care and diligence in seeking shelter, and permitted a recovery for only such damages as were sustained before he succeeded in finding quarters for himself and his people. Such damages were the proximate result of the defendant's breach of duty, and were properly allowed. The facts do not present a case where the passenger would have been subjected to

the same exposure had the depot been open and warmed, and the case does not come within the rule laid down in Railway v. Pevey, 30 Texas Civ. App., 460, 70 S. W. Rep., 778. It is possibly true, as contended by appellant, that a passenger can not complain of a failure on the part of the company to comply with the statute if other accommodations are accessible, but the charge complained of is not in conflict with the contention. We think that the criticism of the charge is without merit, and that the special charges were properly refused.

The train in question was not scheduled to stop at Omaha, and the conductor testified that he informed Wallace of the fact, and told him that the agent would not be at the depot, and that the depot would not be open or warmed, but that Wallace requested the train to be stopped there so that he and his people could leave the train at that point, and that the train was stopped in accordance with the request. The court instructed the jury that if they found such to be the case, they should return a verdict for the defendant. Wallace denied having received such information or having made such request. The charge on this issue was sufficiently full and the objection urged thereto is hypercritical.

The train which Wallace and his family boarded at Fort Worth ran only to Mount Pleasant, when the coach in which they were riding was incorporated into a train running on the main line. This train ran past Omaha, but was not scheduled to stop there. It was shown beyond controversy that Wallace was directed by the agent of the defendant at Fort Worth to take the train in question, and was informed that it was the proper train to take for Omaha. The conductor testified that before the train reached Mount Pleasant he informed Wallace that the train would not stop at Omaha, and that he would have to get off at Mount Pleasant, there being no stop between Mount Pleasant and Omaha. Wallace denied having received such information. It was shown that the day train stopped at Omaha. The defendant requested the court to charge the jury that the company had a right to establish the regulation under which the train in question was run past Omaha without stopping; that it also had the right, when the mistake of its agent at Fort Worth was discovered, to correct the same, and that if Wallace was informed before the train reached Mount Pleasant, that the train would not stop at Omaha, then it was his duty to get off at Mount Pleasant and wait for the local day train which stopped at all stations. The court refused to give the requested instructions and declined to submit the issue to the jury in any form.

In Railway Co. v. Hassell, 62 Texas, 256, Hassell bought a ticket from Jacksonville to Elkhart, and was directed by the agent who sold the ticket to get on a through train which did not stop at Elkhart. The conductor of the train discovered the mistake of the agent and requested Hassell to leave the train at Palestine. Hassell refused to do so, and the conductor put him off. It was held that the company had a right to eject him at any regular station at which the train stopped.

Applying this rule to the case in hand, the conclusion is reached that although the agent of the company at Fort Worth told Wallace and his family that they could travel on the through train to Omaha, the company had a right to correct the mistake and to require them to leave the train at any regular station. It also follows that if they were informed of the mistake and requested to leave the train at Mount Pleasant, it was their duty to comply with the request. And it would seem that if, after they received such information, they remained on the train, they took the chances of inducing the conductor on the main line, who was not the conductor in charge of the train on the Fort Worth branch, to stop the train at Omaha, and the consequences of getting off at a station where the train was not expected to stop. They must have known that it would be a mere accident if the depot at such station was opened and warmed. The agent at Omaha could not be expected to be prepared to receive passengers from a train which, under the rules of the company, did not stop there. If Wallace had notice, before the train left Mount Pleasant, that the train was one which did not stop at Omaha, he had no legal right to require it to be stopped at that station, and continued on the train at the risk of being carried past his destination or of finding the depot there not prepared for his reception, in case he succeeded in inducing the conductor to stop the train at that point. His tickets were merely punched, and were not taken up by the conductor on the Fort Worth branch, and he could have traveled thereon from Mount Pleasant to Omaha on the first train going in that direction which stopped at Omaha. The rule announced in the Hassell case, supra, was applied by this court in Railway Co. v. Campbell, 69 S. W. Rep., 451, and we think it must be held in this case that the trial court erred in refusing to submit this issue to the jury, and the judgment will therefore be reversed and the cause remanded.

*Reversed and remanded.*