GEO. W. CLUCK v. HOUSTON & TEXAS CENTRAL RAILROAD COMPANY.

Decided April 13, 1907.

**1.—Contract—Offer by Mistake—Acceptance.**

Where an offer is made by mistake it does not become binding by its acceptance by one having knowledge that it was so made; the rule avoiding contracts for mistake only when it is mutual does not apply.

**2.—Same—Carrier of Passengers—Excursion Rates.**

A railway company advertising excursion tickets at reduced rates, included therein a rate from a flag station where there was no agent and no tickets were sold. One boarding the train there with knowledge of such facts and for the purpose of taking advantage of them, and tendering, with the purpose and expectation of meeting a refusal, the advertised excursion rate in cash to the conductor, who had no right to sell tickets or collect less than regular rates, can not complain that such tender was declined and he required to pay the regular fare or leave the train.

**3.—Charge—Damages—Harmless Error.**

An instruction that plaintiff could recover only such damages as persons of "ordinary prudence" would have suffered, though incorrect, was harmless, when the evidence raised no question as to plaintiff being such a person, and the verdict, which was for defendant, was evidently upon other issues.

Appeal from the District Court of Williamson County. Tried below before Hon. V. L. Brooks.

*John Dowell,* for appellant.—The special answers alleging mistake presented no defense. Eldridge v. McAdams, 24 S. W. Rep., 310; Robertson v. Smith, 11 Texas, 217; Houston & T. C. Ry. Co. v. Van Alstyne, 56 Texas, 449; May v. San Antonio & A. P. Town Site Co., 83 Texas, 505; Kesler v. Zimmerschitte, 1 Texas, 55; Sayles' Treatise, Edition 1882, sec. 259, p. 168; Lawson on Contracts, secs. 206, 209, page 235; Bishop on Contracts (enlarged edition), sec. 701, p. 273.

*S. R. Fisher, J. H. Tallichet* and *S. W. Fisher,* for appellee.—Where an offer is made by mistake, the party appearing to make the offer really not intending to make it, such offer can not be accepted by a person who actually knows that the offer is made by mistake, for there is no meeting of the minds of the parties, and therefore no agreement. Defendant's answer fully and distinctly raised this issue. Dorsey Printing Co. v. Gainesville C. S. Oil-Mill Co., 61 S. W. Rep., 556; Hume v. United States, 132 U. S., 406; Shelton v. Ellis, 70 Ga., 297; Harran v. Foley, 62 Wis., 584; Griffin v. O'Neil, 48 Kan., 117; Everson v. International Granite Co., 65 Vt., 658.

FISHER, CHIEF JUSTICE.—This is a suit by the appellant against the Railway Company to recover damages for the alleged wrongful

and negligent conduct of one of appellee's conductors on one of its passenger trains, in requiring the appellant and his wife to disembark from the train at Rutledge, a station on appellee's line of road. Upon trial below, a verdict and judgment were in favor of the Railway Company.

The theory of the case as presented by the appellant is that he and his wife were rightfully upon the train as passengers, and were entitled to be transported from Cedar Park, the station where they boarded the train, to Houston, Texas, under an advertised, quoted and listed rate made by appellee of $2.75 each, for round trip tickets between the two places; that there were no tickets on sale at Cedar Park, but that the appellant and his wife, upon the arrival of the passenger train, boarded the same, and tendered to the conductor $2.75 each, as payment for passage in accordance with the advertised rate. The conductor refused to accept such tender and informed the appellants that they must procure a ticket at the next station, which was Rutledge, about four miles distant from Cedar Park; and it is contended that he had authority to issue them a ticket or to accept the amount tendered as payment for transportation to Houston. When the train reached Rutledge they were, over their protest, required to leave the same by the conductor.

The only defense raised by appellee's answer which we deem it necessary to notice is the contention that the appellant and his wife did not board the train in good faith intending to become passengers, but their purpose was to produce a situation that would result in litigation, and that the rate relied upon by appellant as applying to Cedar Park was made by one of appellee's agents by and through mistake, which mistake, it is alleged was known to the appellant; that Cedar Park was merely a flag station, and that the appellee had no agent at that point, nor were there any tickets on sale there.

There is evidence in the record which tends to establish the following facts: That Cedar Park was at one time a regular ticket office on appellee's road, but that for several months before the 13th of August, 1904, the day that appellant and his wife boarded the train at that place, it had been and was a flag station, and there was no ticket office or agent at that place, and no tickets were sold there, but parties who boarded the appellee's trains at that place were required to pay their fare in money to the conductor at the rate of three cents a mile. These facts were known to Cluck at said time; and it appears that in boarding the train and making the tender to the conductor, his wife was present and he acted as her agent. Sometime prior to the 13th of August, the appellee issued a circular advertising an excursion to Houston and Galveston from points on the line of appellee's road, among which was mentioned Cedar Park, the rate from that point being stated in the advertisement at $2.75. Among other matters stated in the heading of the advertisement is a statement to the effect that "roundtrip tickets will be sold for trains arriving at Houston and Galveston on the evening of August 13 and the morning of August 14." In stating Cedar Park as one of the places where roundtrip tickets would be sold, the clerk or agent of the appellee in making up

the circular advertisement, through inadvertence and mistake, included that place. And in this connection we desire to say that there is evidence of some facts in the record which would authorize the conclusion that the appellant knew that the statement made in the circular that tickets would be on sale at Cedar Park on that day, was a mistake. We do not mean to say that it is shown by the evidence that the appellant had actual notice of this fact, but there is evidence of circumstances sufficient to justify the jury in drawing the inference that he must have known that a mistake was made in the circular in stating that tickets would be on sale at that place. And there is evidence to the effect that before the appellant and his wife boarded the train he saw one of these circulars and made the statement, substantially to the effect, that he was going to get on the train and tender the money at the advertised rates, and dare them to put him off, or if they put him off, he would make them "pop." On the arrival of the train at Cedar Park, the appellant with his wife boarded the same without procuring a ticket, and when called upon by the conductor for fare, he tendered as payment for both the sum of $5.50 for roundtrip fare to Houston. The conductor informed him that his run terminated at Austin, and that he was not authorized to receive that sum as fare to Houston, and that he was not authorized to sell tickets; that the appellant would be required to pay three cents a mile as fare from Cedar Park to Rutledge, a station which appears from the evidence to be about four miles south of Cedar Park; that at the latter place the appellant could purchase the roundtrip tickets to Houston. The train stopped at Rutledge a sufficient length of time to permit tickets to be purchased, but the appellant declined to pay the fare between Cedar Park and Rutledge, and did not buy tickets from the latter point, as he was requested to do. Thereupon, he and his wife were required to leave the train.

There are some circumstances developed by the evidence which justified the trial court in submitting the issue to the jury whether the appellant boarded the train with the bona fide purpose of becoming a passenger from Cedar Park to Houston, and whether or not his object may have been simply to bring about a situation that would require his expulsion from the train. The court also correctly submitted the question of mistake, as pleaded by appellee. Subdivision 2 of the charge presents in a way as favorably as appellant was entitled to his theory of the case.

It is contended by the appellant that the court erred in not sustaining demurrers to appellee's answer pleading a mistake in fixing rates from Cedar Park. The basis for this contention is that it does not appear that the mistake was mutual; and in this connection it is also insisted that the court erred in submitting as an issue to the jury the question of mistake. The issue of mistake, as submitted by the charge, was in connection with the question whether the appellant had notice that an error or mistake had been committed in quoting tickets and fixing rates in the advertisement from Cedar Park. The defense insisted upon is not governed by the rule that the mistake must be mutual before relief will be afforded, but it is an instance in which an error or mistake has been committed of which another, with notice, seeks

to take advantage. This is illustrated in the cases of International & G. N. Ry. Co. v. Hassell, 62 Texas, 256; St Louis S. W. Ry. Co. v. Campbell, 69 S. W., 451; and St. Louis S. W. Ry. Co. v. Wallace, 74 S. W., 581. In these cases the passengers had procured tickets from agents authorized to sell to points on the line where the train they boarded did not stop. They boarded the train upon information and statement from the agents from whom they procured the tickets that the train would stop at those places; but the circumstances were such in each case as to indicate that the information received from the agent was not correct, and that they were mistaken in the statement that those trains would stop at the stations for which the passengers had purchased tickets. Under such circumstances it was held that the passengers were not entitled to act upon the information received, and that no cause of action would exist against the Railway Company for the acts of the conductors in refusing to stop at those places.

Cluck, in this instance, knew that there were no tickets on sale at Cedar Park, and that it had been discontinued as a ticket office; and it is a fact of such common knowledge that he and others ought to have known it that conductors are not charged with the duty of selling tickets, and that it was not customary and usual for them to have in their possession tickets for sale to passengers who boarded the trains without them. The offer of the excursion rate from Cedar Park was to those who bought tickets; and Cluck, when he boarded the train without a ticket, must have known that the conductor could not accept the excursion rate from Cedar Park to Houston and return, and that he, if he wished the benefit of the excursion rate, would be required to purchase the desired tickets either at Rutledge or at some other point on appellee's line where such tickets would be on sale. His insisting on the conductor doing the unusual thing of furnishing him transportation to Houston and back on the fare tendered, together with a reasonable time given him at Rutledge to procure tickets by paying the small additional sum of fifteen cents each for himself and wife, which would represent the fare from Cedar Park to Rutledge, together with the previous statement that he had made as set out in the findings of fact, is some evidence bearing upon the question as to his good faith in boarding the train and as to the question of his bona fide intention of becoming a passenger to Houston. These issues, together with the question of mistake, as before said, were submitted to the jury; and there is evidence in the record to justify the conclusion that they reached.

In the latter part of subdivision 3 of the charge of the court, in submitting the issue of damages, is this instruction: "In this connection you are especially instructed that if you find that plaintiff and his wife were wrongfully ejected from said train, and that plaintiff is entitled to a verdict under the foregoing instructions, you will not in estimating the amount of his damages, allow anything for any loss of time, mental anguish or physical pain suffered or lost by plaintiff or his wife, except for such loss of time, mental anguish or physical pain, if any, as persons of ordinary prudence would have lost or suffered, when ejected from the train under similar circumstances."

This charge is objected to because it is tantamount to an instruction that the plaintiffs would not be entitled to recover unless they

had sustained such damages as persons of ordinary prudence would have suffered. Literally, the charge is subject to this objection. Of course, we understand that the trial court did not intend to instruct the jury that the plaintiffs could not, for loss of time, mental anguish or physical suffering recover unless they were persons of ordinary prudence; but how the error crept into the charge we are at a loss to consider; but we have gone over the questions presented in the respect pointed out, still we are of the opinion that it presents no reversible error when taken in connection with the other part of sub-division 3, and also when considered in the light of the facts. There is no question in this case but that the plaintiffs were persons of ordinary prudence; and that if the jury had been satisfied from the evidence that they were entitled to recover on the other issues in the case, they would have had no hesitancy in determining that the plaintiffs were entitled to recover for the loss of time, mental anguish and physical suffering. In other words, that they would not have been denied a recovery on the ground that they were not persons of ordinary prudence. It is apparent from the record that the verdict in favor of appellee was based upon the other issues that we have discussed, and that the charge in question had no effect in influencing the jury to find against appellant.

The fifth error is a blanket assignment which we can well decline to consider; but we have gone over the questions presented in the refused instructions, and are of the opinion that the trial court committed no error in refusing these charges.

We have considered the objections to the admission of evidence and the refusal to admit certain evidence, and find that these assignments present no reversible error.

*Affirmed.*

Writ of error refused.