LAKE SHORE & MICH. SOUTHERN RY. CO. v. CHARLES PIERCE.

*Railway passengers—Removal from train.*

Railway passengers have a right to rely, until differently informed, on the information received by them from ticket agents in answer to their inquiries as to the stoppages of trains. But they must not disregard reasonable means of information.

Where a railway passenger is not in fault in starting on a particular train, he has a right of action against the company for damages arising from its refusal or failure to take him to his destination as agreed through its ticket agent. But whatever his remedy he has no right, without paying additional fare, to stay on the train after he is notified by the conductor that it will not stop there, and the additional exaction will be an element of the damages to which he may be entitled.

A railway conductor cannot be required by a passenger to deviate from his train rules on the latter's statement of an alleged agreement with the company conflicting therewith.

Every one is bound to know that a railway conductor has no general power to run his train except in conformity to the schedule.

A passenger wrongfully on a railway train can recover no damages for his removal and exclusion therefrom except for needless violence. He cannot complain of an indignity which it was his duty to avoid and which he was bound to expect.

A railway company has power, subject to liability for damages for any breach of contract involved, to determine for itself what trains shall stop at particular places.

Error to Branch.   Submitted Oct. 21.   Decided Jan. 5.

CASE.   Defendant brings error.   Reversed.

*Weaver & Weaver, James Mason, Oscar G. Getzen-Danner* and *Ashley Pond* for plaintiff in error.   A station agent

on a railroad cannot change or suspend the regulations of
the company (*Ohio & Miss. R. R. Co. v. Hatton* 60 Ind.
12; *Pittsb., Cin. & St. L. Ry. v. Nuzum* id. 533) which
has the right to prescribe reasonable rules for the govern-
ment of its employees in the conduct of its business upon its
trains, to which passengers should conform, and by which
the tickets are qualified: Thomp. Carriers 22, 335; *Craw-
ford v. C., H. & D. R. R.* 26 Ohio St. 580; *C. C. & C.
R. R. v. Bartram* 11 Ohio St. 457; *Hamilton v. N. Y. C.
R. R.* 51 N. Y. 100; *Downs v. N. Y. & N. H. R. R.* 36
Conn. 287; *Crocker v. N. L. W. & P. R. R.* 24 Conn. 249;
*Pier v. Finch* 24 Barb. 514; *Beebe v. Ayres* 28 Barb. 275;
*Cheney v. Bost. & Me. R. R.* 11 Met. 121; *Johnson v.
Concord R. R.* 46 N. H. 213; *Boston & Lowell R. R. v.
Proctor* 1 Allen 268; *Townsend v. N. Y. Cent. R. R.* 56
N. Y. 295; *Shelton v. L. S. & M. S. Ry. Co.* 29 Ohio St.
214; *Stephen v. Smith* 29 Vt. 160; *Day v. Owen* 5 Mich.
526; *Dietrich v. Penn. R. R.* 71 Penn. St. 432; *Hibbard
v. N. Y. & E. R. R.* 15 N. Y. 455; *Adwin v. N. Y. C.
& H. R. R. R.* 60 Barb. 590; where a company sells a
ticket entitling the holder to ride a certain number of times
within a given period for a price below the usual rate, and
specifying on its face that it is good for that period only,
the purchaser cannot ride upon it after the expiration of
the time even though he had not ridden the specified num-
ber of times within it: *Powell v. P., C. & St. L. R. R.* 25
Ohio St. 70; *Jordan v. Norton* 4 M. & W. 155; *Grace v.
Adams* 100 Mass. 505; *Lillis v. St. L., K. C. & N. R. R.*
64 Mo. 464; *Sherman v. Chic. etc. R. R.* 40 Ia. 45; *Wake-
field v. S. Bost. R. R.* 117 Mass. 544; *Keeley v. Bost. etc.
R. R.* 67 Me. 131: *Boice v. Hudson R. R. R.* 61 Barb.
611; *Barker v. Coflin* 31 Barb. 556; a company can dis-
criminate in rates between those who buy tickets and those
who pay on the cars, and passengers can be ejected if they
do not comply with the regulation: *State v. Chovin* 7 Ia.
204; *St. L., A. & T. H. R. R. v. South* 43 Ill. 177; *Hil-
liard v. Goold* 34 N. H. 241; *T. W. & W. R. R. v. Wright*
68 Ind. 586; it is not bound to give a lay-over ticket, but if

it does so, it may require it to be used within the time specified: *Churchill v. Chic. & Alt. R. R.* 67 Ill. 391; *Elmore v. Sands* 54 N. Y. 512; a passenger who leaves the train without getting a stop-over check can be ejected if he refuses to pay fare on resuming his journey: *Stone v. C. & N. W. R.* 47 Ia. 82; and is not entitled to passage even though he offers to pay his fare after being ejected; *O'Brien v. B. & W. R. R.* 15 Gray 20; *Hoffbauer v. Delhi & N. W. Ry.* 52 Ia. 342; a passenger is charged with full notice of the regulations of the company, and is bound to inform himself before starting: *State v. Overton* 4 Zab. 435; *Chic. & Alt. R. R. v. Randolph* 53 Ill. 511; he may be ejected for refusing to pay additional fare even when he claims that the ticket given him was for a place short of his destination: *Frederick v. M., H. & O. R. R.* 37 Mich. 342; *C., B. & Q. R. R. v. Griffin* 68 Ill. 499.

*Frank L. Skeels* and *Loveridge & Barlow* for defendant in error. A railway company is bound by the act of its agent in stating to a passenger that he can buy a ticket for a continuous journey, and stop over with it: *Burnham v. Grand Trunk Ry.* 68 Me. 298; Cooley on Torts 646; Whart. Agency § 162; passengers may assume that the agents of carriers have a right to bind them by contracts which the agents make in their particular employment: Hutchinson on Carriers § 269; Whart. Neg. § 160; Story Agency § 452; Redf. Railways § 288; a company is responsible in its corporate capacity for acts done by its agents in the course of their employment: *Phil. Wil. & Baltimore R. R. v. Quigley* 21 How. 202; a railway regulation restricting to special trains the holders of tickets which purport to entitle them to passage on any regular train does not warrant exclusion from a regular train where the holder of ticket has taken passage without notice of the rule: *Maroney v. Old Colony & Newport Ry.* 106 Mass. 153.

CAMPBELL, J. Pierce obtained judgment against the plaintiff in error for expulsion from a train on which he was riding, under a disputed claim of right. The facts which

must have been found by the jury to maintain his right
were these: Pierce living near Batavia, which is a station
about six miles distant midway between Bronson on the
west and Coldwater on the east, bought a ticket from the
Batavia agent for passage to Elkhart and return, which was
to be used within 30 days, and for continuous passage each
way. Before and at the time of buying the ticket he
inquired of the agent what trains would take him back and
forth on the ticket, and was told that he could return on any
train, but particularly that he might do so on the midnight
or on the 5:10 o'clock morning train. On his return he took
the 5:10 train at Elkhart. After the train had gone some
distance the conductor in his usual round called on Pierce
for his ticket, and on seeing it took it up, and told him he
would have to get off at Bronson or else pay 20 cents more
and go on to Coldwater, as the train would not stop at
Batavia. There is considerable conflict as to what passed
between the passenger and conductor then and before reach-
ing Bronson, but it is agreed that the conductor was informed
of the circumstances under which Pierce claimed to have
bought his ticket, and that he informed Pierce that he should
not stop at Batavia, and that it was not a place at which that
train was in the habit of stopping. The conductor gave
Pierce a slip which he took up before reaching Bronson,
and refused to restore his ticket. Pierce did not leave the
car at Bronson. Immediately after leaving Bronson the
conductor found him on the train, and demanded fare to
Coldwater. On Pierce's refusal to pay beyond Batavia
unless he should conclude to go on, and on a repetition of
the same explanation in substance, the conductor put him
off the train.

The case presents some different questions, depending
partly on the liability of the company for not taking Pierce
to Batavia on the train in question, and partly on the duty
of Pierce, whether such liability existed or not, to leave the
train at Bronson and seek redress in some other way.

Upon the question whether the company is liable for the
action of the agent at Batavia, it is insisted by the plaintiff

in error that the passenger is bound to ascertain for himself what trains stop at the place of his destination, and acts at his peril in boarding any others. It is undoubtedly true that where some trains make general and some only partial stoppages the passenger should not disregard reasonable means of information in regard to his proper course. But he cannot be supposed to know that any such difference exists, unless he has means of knowing the facts. Time-tables furnish one means of information, but they are not always accessible or intelligible to all classes of passengers, and the experience of all travelers is that they are sometimes not changed as soon as train changes are. made, and are not always strictly adhered to. It is the business of the agents who contract with passengers for their fare to have the means of directing them safely, and such an agent is uni-versally resorted to for such information by strangers who have occasion to obtain such guidance. When, as in this case, the attention of the agent was distinctly called to the desire of Pierce to know what trains he could rely on to bring him to Batavia in season for his purposes, we think he had a right to rely on the correctness of the information received, and to act on it at least until informed to the con-trary. It does not appear that any care was taken at Elkhart to warn passengers what trains they must take for their several destinations, and there is nothing to show that Pierce had any reason to doubt the correctness of his course in going upon the train in question until after he had started and the conductor called for his ticket.

It appears from the agent's testimony that he had once stopped the train in question by an order from the superin-tendent, which would indicate that he was the proper person from whom conductors might receive directions in special cases; but as he did not communicate with the conductor having charge of the train on which Pierce rode, that officer had no orders beyond his general instructions, and appears to have acted as he understood them.

If Pierce was not in fault in starting on the train, it is difficult to find any reason why the company should not

carry him in some way to the place of his destination as it had agreed to do. And he had in such case a right of action for such damages as a failure to perform that contract involved. The company could not be justified in refusing to carry him to Batavia, and to do so as agreed.

But this did not necessarily give him a right to remain on the train after he had been told it would not stop at Batavia. Whatever remedy he may have against the company for its breach of contract, he had no right to determine for himself on what train he would travel. The business of railroads can only be carried on safely by having regularity. If trains are arranged in a certain way, and their time fixed with regard to limited stoppages, a conductor would never be safe, if he were bound at his peril to ascertain from any mere stranger the existence of an agreement by the company to change the arrangement and stop at an unusual place. A passenger cannot compel a conductor to deviate from his appointed scheme, and if truly informed concerning the rule as to stoppages, he is bound to conform his own movements to it, and seek redress in some other way. Every one is bound to know that the conductor is not invested with general power to run his train as he pleases, and that so far as he is concerned trains must conform to the schedule.

Pierce ought to have left the train at Bronson, and then if not furnished with passage to Batavia the expense of such passage would be a proper element of damages in addition to such—if any—as were occasioned by the failure to take him through on the train which he was told he could take, and the consequent delay. He ought to have known that if he persisted in remaining on the train the conductor would probably remove him, and such removal was not a distinct wrong in itself, because after leaving Bronson he was wrongfully on the train. He could recover no damages unless for some unlawful violence beyond the necessities of the removal, because it was lawful to take such steps as were necessary to remove and keep him removed from the train. He cannot complain of an indignity which it was

his duty to avoid incurring, and which he was bound to expect. The company had power, subject to damages for any breach of contract involved, to determine for itself what trains should take passengers to Batavia.

Judgment must be reversed with costs, and a new trial granted.

The other Justices concurred.