(21 App. Div. 192.)

### MILLER v. KING et al.

(Supreme Court, Appellate Division, Second Department. October 12, 1897.)

CARRIERS OF PASSENGERS—BREACH OF CONTRACT.

Where a passenger got upon a train on the station agent's assurance that it would stop at his destination, when as a matter of fact it was not scheduled to do so, and as a result he was obliged to get off at an intermediate station, and walk the rest of the distance, he was entitled to substantial damages for breach of the contract of carriage.

Appeal from trial term, Orange county.

Action by George Miller against John King and John G. McCullough, as receivers of the New York, Lake Erie & Western Railroad Company. From a judgment entered on the dismissal of the complaint, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

John W. Lyon, for appellant.
Henry Bacon, for respondents.

CULLEN, J. On the first trial of this action the court treated the cause of action as one to recover damages for a breach of contract of carriage. The plaintiff recovered a verdict of $100. On appeal the judgment was affirmed. Miller v. King, 84 Hun, 308, 32 N. Y. Supp. 332. In the opinion then delivered by Mr. Justice Pratt, in which Justices Brown and Dykman concurred, it was held that the conductor had no right to eject the plaintiff, and that his action in doing so was unlawful, and that the plaintiff was entitled to recover damages for the indignity and humiliation suffered by him. This was a radically different view from that taken by the trial court. Subsequently, on a reargument, the judgment was reversed, and a new trial granted, on the ground that the damages were excessive, on the theory upon which the trial court submitted the cause to the jury,—that of a breach of contract; and it was said that the plaintiff would not be permitted to sustain his judgment on a different theory from that upon which it was recovered at the trial. Miller v. King, 88 Hun, 181, 34 N. Y. Supp. 425. It will be seen that, though the court reversed the judgment, it in no wise retracted its previous ruling that the plaintiff's ejection was unlawful, and he was entitled to damages for the indignity and humiliation suffered thereby. On a second trial the trial court held that the plaintiff had not made out a case of unlawful ejection from the train, and dismissed the complaint. From the judgment entered on that direction, this appeal is taken.

The decision of the general term on the first hearing of the prior appeal, if now followed, requires a reversal of this judgment; but we are not willing to place our disposition of this case on that ground. We do not believe the decision of the general term that the plaintiff was unlawfully ejected from the train was correct. The statement of the plaintiff is substantially that he purchased at the station at Middletown a ticket over the defendant's railroad to Sparrow Bush; that the ticket agent told him that the milk train,

which was then at Middletown, would stop at Sparrow Bush; that, on the faith of that assurance, he and a friend entered the train, and were conveyed to Port Jervis, an intermediate station; that at Port Jervis a new conductor took charge of the train, and, just after it had started from the station at that place, the conductor, on seeing the tickets of the plaintiff and his friend, told them that the train did not stop at Sparrow Bush, and that they must get off. The conductor then stopped the train, and the plaintiff and his friend alighted. The place at which the train was stopped was in the village of Port Jervis, but a short distance from the station, and no complaint is made that it was not a proper stopping place. The plaintiff and his friend thereupon walked from Port Jervis to Sparrow Bush, a distance of some three miles. The day was wet, and the road muddy. It is not disputed that, as matter of fact, the train was not scheduled to stop at Sparrow Bush, nor in its ordinary and proper conduct, according to the rules of the company, would it so stop. The case then presented is simply this: Through the fault of the defendant's station agent, the plaintiff boarded a train which did not stop at the place of his destination. Now, what was the defendant to do? Was it bound to stop the train at all hazards at that place, because the station agent had given the wrong information? Or was it not permitted to correct the blunder of its own servant, remaining, of course, liable for the damages occasioned by that blunder, but for such damages only? We think it had the power to correct its mistake. If the train which the plaintiff had boarded was to proceed on a different branch or route from that on which the place of his destination was situated, it is difficult to perceive how it would be possible for the company to carry out its contract with the plaintiff without violating its contracts with all the other passengers on the train. In this case the train did pass Sparrow Bush, but the rules and schedule of time of the company prescribed that it should pass that place without stopping. A railroad could not be safely operated in disregard of the schedule time and movements of its trains. If the defendant, then, was not obliged to stop the train at Sparrow Bush, what was it to do with the plaintiff? Was it to carry him indefinitely? We think not. The direction to a passenger to leave a train because he has gotten upon the wrong train, even though the error is caused by the company's fault, inflicts upon him no indignity or humiliation. In Railway Co. v. Pierce, 47 Mich. 277, 11 N. W. 157, it was held that, where a passenger had gotten upon the wrong train through the fault of the defendant's agent, this did not justify him in remaining on that train after he was notified of the error, and that, upon his failure to leave the train, the expulsion therefrom was lawful. Fink v. Railroad Co., 4 Lans. 147, would seem to hold substantially the same rule. Of course, in correcting an error, the company must use a proper place for it, and do it in a proper manner. They could not expel a person mistakenly on the train away from a station, or subject him to unnecessary hardships or indignities; but, as already said, there is nothing of that character in this case. We are of the opinion, therefore, that the plaintiff failed to establish a tortious ejection.

The complaint and proof, however, were sufficient to authorize the jury in finding a breach of the defendant's contract to carry; and the plaintiff was entitled to recover damages for that breach. We do not think he was necessarily limited to nominal damages. Therefore the trial court was not justified in dismissing the complaint, unless the plaintiff expressly disclaimed any desire to go to the jury. It is doubtful if a sufficient disclaimer appears in the record before us. It is true that on this appeal the plaintiff's counsel has rather repudiated the idea that this is an action for breach of contract, and insists that it is an action for a tortious ejection. But we think he should not be held to too strict a rule in this respect, for, as a justification of the position he assumed, he relies on a decision of the general term of this court,—a decision which had not been retracted nor overruled. We are of the opinion, therefore, that justice requires that there should be a new trial of this action, and the cause be submitted to a jury on the question of the breach of the defendant's contract of carriage, unless the plaintiff declines to take that course.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.

GOODRICH, P. J. In July, 1893, the defendants were duly appointed receivers of the New York, Lake Erie & Western Railroad Company, and, as such receivers, have since operated the above road. On Sunday morning, March 11, 1894, the plaintiff and a friend purchased tickets of the ticket agent at Middletown for passage to Sparrow Bush. He and his friend testified that, before doing so, they inquired of the agent whether a milk train which was then coming to the station stopped at Sparrow Bush, and were informed that it did. The plaintiff boarded this train, and the conductor called for and punched his ticket in the usual method, and handed it back without any statement as to the plaintiff's destination, although the plaintiff inquired how long the train would stop at Port Jervis, and was informed that it would stop about 10 minutes. When the train arrived at Port Jervis, the plaintiff alighted for some refreshments, and, when the train was ready to leave that station, got on again. Soon after, a new conductor entered the train, and, when it was a short distance outside of the depot, called for tickets, and, upon receiving the plaintiff's, told him that the train did not stop at Sparrow Bush. The plaintiff testified that the following conversation occurred. The plaintiff said: " 'Well, we paid, and I think we ought to have the privilege of riding there,—bought a ticket to ride there.' Well, he [the conductor] said he did not stop there, and he says, 'You will have to get off;' and he pulled the bell rope, and stopped the train, and we got off." The plaintiff walked back to the station, some 200 or 300 yards distant, and afterwards walked to Sparrow Bush. The ticket agent denied, though in a somewhat hazy manner, that he told the plaintiff that the train stopped at Sparrow Bush. The conductor of the first train testified that at Port Jervis the passenger car was cut off, and other cars were attached to the second train, which also was a milk train. The conductor of the second train testified

that a short distance from the depot he asked for tickets, was shown the plaintiff's ticket, and at once told him that the train did not stop at Sparrow Bush, and pulled the bell, telling the plaintiff that he could get off there, or go on to Pond Eddy, eight miles beyond Sparrow Bush; and the plaintiff replied that he did not want to go to that place, and stepped off the train as soon as it had stopped. This conductor admits that the plaintiff told him he had bought a ticket for Sparrow Bush, and wanted to go there. The plaintiff and his friend denied that any such option was offered to them.

There have been two trials of the action. The first resulted in a verdict of $100 for the plaintiff. This was affirmed by the general term (84 Hun, 308, 32 N. Y. Supp. 332), but a reargument was ordered (88 Hun, 181, 34 N. Y. Supp. 425), and on the reargument the judgment was reversed. In the first opinion the affirmance was stated to be on the ground that the declarations of the ticket agent bound the defendants, and formed part of the contract, and therefore the plaintiff was lawfully on the train, and that, "under all the circumstances, the conductor had no right to eject the plaintiff, and his action in doing so was unlawful, and the plaintiff is entitled to damages for the indignity and humiliation suffered thereby." The reargument was ordered on the grounds "that the case was tried at the circuit solely upon the theory of a breach of contract. The court had ruled that the ejectment of the plaintiff from the train was not unlawful. On appeal, this court apparently overlooked that ruling, and sustained the judgment, on the ground that the conductor had no right to eject the plaintiff, and his action in doing so was unlawful. The plaintiff should not be permitted to sustain his judgment on a different theory than that upon which it was recovered at the trial. Treating the action as one ior breach of contract, the damages were excessive. No special damages were alleged or proven. The plaintiff was entitled to actual damages only, and that limited his right to recovery to the reasonable expense of procuring a conveyance from the place where he was ejected to his destination." 88 Hun, 182, 34 N. Y. Supp. 425. This condition of affairs requires an explanation of the method of the last trial. The complaint alleged that the defendants did not carry the plaintiff to his destination, but, in violation of their duties as common carriers and said contract, ejected the plaintiff from the train before it reached Sparrow Bush, thereby inflicting upon him indignity, inconvenience, damage, and injury. At the opening of this trial, the plaintiff's counsel, in answer to a question of the court, stated that the action was one for unlawful ejection from the train, and not an action for breach of contract; and the action was tried upon that theory. The defendants, at the close of all the evidence, moved to dismiss the complaint, on the ground that there was no evidence to show any unlawful ejection, but that, according to the conductor's evidence, he gave the plaintiff his choice to go on to Pond Eddy or to leave the train, while, according to the plaintiff's testimony, he was required to get off the train at a proper place, in accordance with the regulations of the company, and that the conductor was acting strictly in accordance with his duty in directing him to get off the train at that point. The court, upon the theory upon which the plaintiff tried his

cause, granted the motion on the ground that the plaintiff had not
made out a case of unlawful expulsion; whereupon the plaintiff's
counsel asked to go to the jury on the question of the unlawful ejec-
tion of the plaintiff from the train. Not content with this distinct
definition of the gravamen of his action, the plaintiff's counsel, on the
argument of the appeal, restated his position, both orally and in his
printed points. Under these circumstances, we are compelled to con-
sider the question upon the ground, and that only, upon which the
plaintiff desires to stand, viz. that the action is to recover damages
solely for the unlawful expulsion of the plaintiff. This was the rul-
ing of the court in the opinion in 88 Hun, 181, 34 N. Y. Supp. 425.

We have two principles laid down in this action in this department
as the law of the controversy: First, a party should not be permit-
ted to sustain a judgment on a different theory than that upon which
it was recovered; second, that the plaintiff was lawfully aboard the
train, was unlawfully ejected, and is entitled to recover his damages
for the indignity and humiliation suffered thereby. For the purposes
of this appeal, we must assume the truth of the statement made by the
plaintiff and his witness Rose that the ticket agent told him that the
train would stop at Sparrow Bush, and that the conductor did not tell
him that he could go on to Pond Eddy, but ordered him to leave the
train. Then he was lawfully on the train, and was unlawfully ejected
therefrom, and had the right to have the amount of his damages as-
sessed by the jury. Or, if we take the evidence in the best light for
the defendants, there was a conflict of evidence between the plaintiff
and the defendants as to the circumstances of the sale of the ticket
and the expulsion; and, as the plaintiff asked to have these questions
submitted to the jury, the refusal was reversible error. The conver-
sation between the plaintiff and the ticket agent forms a part of the
contract.

The case of Railroad Co. v. Ashby, 79 Va. 130, is exact authority for
this proposition. The court said:

"The company has no right to sell a passenger a ticket for a particular sta-
tion, and then refuse to stop at that station; and the act of the ticket agent
in selling such ticket to a passenger is the act of the company; and if the con-
ductor refuse to allow the passenger to disembark at such station for which he
holds a ticket,—if he obeys the company's regulation,—he is exonerated; but
the company is responsible for the act of the agent who sold the ticket, and
wrongfully received the money for it."

The inference from this decision is that the plaintiff has the right
of action against the company for his unlawful ejection, based not
solely upon the action of the conductor, but also upon that action
taken in connection with the declaration of the ticket agent; and this
is within the allegations of the complaint. There is abundant author-
ity for the proposition that a person can recover damages for an un-
lawful expulsion, without proving special pecuniary damages.

In Railway Co. v. Nuzum, 50 Ind. 141, the distinction is recognized
between a mistake made by a passenger in the use of a ticket which
was not induced by the company and a ticket purchased upon the
representations of the ticket agent.

In Hamilton v. Railroad Co., 53 N. Y. 25, 28, the plaintiff was un-
lawfully ejected from a car of the defendant. The court said:

"The act, nevertheless, was unlawful, and, being so, the plaintiff had a right to compensatory damages therefor. These included not only compensation for the loss of time and the amount the plaintiff was obliged to pay for passage upon another car, but, in addition thereto, the injury done to his feelings might be taken into consideration by the jury, and a suitable recompense given therefor."

—And this without proving specific pecuniary damage. Cooley, Torts (2d Ed.) pp. 68, 69; 2 Sedg. Dam. (8th Ed.) § 865; Muckle v. Railway Co., 79 Hun, 32, 29 N. Y. Supp. 732.

I do not regard the case of Townsend v. Railroad Co., 56 N. Y. 295, as authority on the question. In that case the plaintiff had purchased a ticket from Sing Sing to Rhinebeck, and boarded a train which only went to Poughkeepsie, upon which his ticket was taken up by the conductor, and no check or other ticket given to him. At Poughkeepsie he took another train, which was to stop at Rhinebeck. The conductor of this train called upon the plaintiff for his ticket, and was informed that it had been surrendered to the conductor of the first train. The conductor told him that it was his duty to collect his fare, and that the other conductor would make it right with him; but the passenger refused to pay his fare, and was compelled to leave the train. The court held that the conductor was only performing his duty according to the reasonable regulations of the company, requiring a passenger to show a ticket or pay his fare, and that the wrongful taking of the passenger's ticket by the first conductor did not exonerate the plaintiff from compliance with the regulations, and that under such circumstances he was lawfully put off the train. The case at bar is easily distinguishable. Here the passenger had his ticket, and exhibited it to the conductor. The ticket showed that the passenger had the right of passage to Sparrow Bush, and the conductor was informed of, and was bound by, the contract of the company made with the ticket agent, and could not lawfully put the plaintiff off the train. He could have stopped the train, notwithstanding the fact that it was not scheduled to stop at Sparrow Bush. The defendants were legally bound to stop, and his stopping would have been within his duty, regardless of the regulations. It is not a reasonable regulation that the company can sell a passenger a ticket for a continuous passage from Middletown to Sparrow Bush, and, when the ticket is produced, refuse to comply with its undertaking to let him off at Sparrow Bush. The conductor, as between himself and the company, was justified in refusing to stop; but, as to the plaintiff, the defendants are liable for the unlawful expulsion.

It was held in Palmeri v. Railway Co., 133 N. Y. 261, 30 N. E. 1001, that a railroad corporation is civilly liable for the unlawful acts of its servant, done in the prosecution of the business intrusted to him, if its passengers are injured thereby, and that good faith and motives on the part of the servant are not a defense.

In Hibbard v. Railroad Co., 15 N. Y. 455, the plaintiff refused to show his ticket, stating as his reason that he had once shown it, although the train had since such showing stopped at another station; and the court held that the regulation requiring a passenger to show his ticket whenever required by the conductor was reasonable, and that his ejection from the train for failure to do so was lawful.

The respondents' counsel cites the case of Railway Co. v. Pierce, 47 Mich. 277, 11 N. W. 157. The case hardly contains his contention, as that was a case where a passenger was wrongfully on a train, and was ejected, and it was held that he could not recover damages for his removal except for needless violence; but in the case at bar the plaintiff was lawfully on the train. We also notice that this case expressly holds that railway passengers have a right to rely upon the information received by them from ticket agents in answer to their inquiries as to the stoppages of trains. So, also, in another case cited by the appellant's counsel (Wells v. Railroad Co., 67 Miss. 24, 6 South. 737), the court held that it was only in the absence of a special contract that a passenger could complain of the refusal to stop a train at a station other than a scheduled station. In the two other cases cited by him (Railway Co. v. Hassell, 62 Tex. 256, and Trotlinger v. Railroad Co., 11 Lea. 533), there is a recognition of the rule that, while the company may establish reasonable regulations for running and stopping of its trains, they must give reasonable notice thereof, and they do not controvert the doctrine for which the plaintiff contends, that he had the right to rely upon the information received from the ticket agent.

We must therefore conclude that the plaintiff was lawfully on the train, and that, by his contract with the company, he had the right to be let off at Sparrow Bush, unless the conductor offered him the option of going on to Pond Eddy, or of leaving the train; and that, as there was contradictory evidence on that subject, the question of fact should have been submitted to the jury, and the dismissal of the complaint was error.

The judgment must be reversed, and a new trial granted.