ALEXANDER McDONALD, DEFENDANT IN ERROR, v. CENTRAL RAILROAD COMPANY OF NEW JERSEY AND BALTIMORE AND OHIO RAILROAD COMPANY, PLAINTIFFS IN ERROR.

Submitted March 27th, 1905—Decided November 20th, 1905.

1. The plaintiff, before purchasing a ticket at Elizabeth, inquired of the agent if a certain train stopped at Chester, was answered in the affirmative, and given a time-table showing that the train was scheduled to stop. *Held*, that the plaintiff had by the contract a right to have the train stop at Chester, and that his ejection at the last preceding station was wrongful.

2. The plaintiff was familiar with the route, his ticket was a coupon ticket, of which certain coupons purported to be issued by the Central Railroad Company as agent, and he did not deny that he knew that the Central Railroad Company acted as agent only as to points beyond its own road. *Held*, that the relation of carrier and passenger did not exist between the plaintiff and the Central Railroad Company after the train left the Central road.

3. *Little* v. *Dusenberry*, 17 *Vroom* 614, distinguished.

---

On error to the Supreme Court.

For the Central Railroad Company, *George Holmes* and *William A. Barkalow*.

For the Baltimore and Ohio Railroad Company, *Vredenburgh, Wall & Van Winkle*.

For the defendant in error, *John K. English*.

The opinion of the court was delivered by

SWAYZE, J. This is an action of tort. The first count of the declaration is for negligently misinforming the plaintiff as to the train which he should take to go from Elizabeth to Chester, Pennsylvania. The second count is for a wrongful ejection of the plaintiff at Philadelphia.

The plaintiff recovered damages for the ejection and judgment was entered against both companies.

Whether the ejection of the plaintiff was wrongful depends upon the contract. The material facts are as follows: Just before buying a ticket from Elizabeth to Chester he inquired of the ticket agent at Elizabeth whether the train which he afterward took stopped at Chester, and was informed that it did. He then asked for a time-table and ticket and received both. The time-table purported on its face to be one of the Royal Blue Line, and bore the names of the Central Railroad of New Jersey, the Philadelphia and Reading railway and the Baltimore and Ohio railroad. There was no other proof as to the company by which it was issued. The time-table showed that the train stopped at Chester. No question arose until just before the train reached Philadelphia, when the conductor of the Philadelphia and Reading railway informed the plaintiff that the train did not stop at Chester and that he would have to change cars at Philadelphia. When the train reached the station in Philadelphia the conductor of the Baltimore and Ohio railroad took charge. He came into the car with two policemen, inquired for the man who wanted to go to Chester and told the plaintiff he would have to get off, to which the plaintiff replied that he would have to use force; the conductor grabbed the plaintiff by the shoulder and the plaintiff thereupon left the car. The plaintiff had been in the habit of taking the same train, which had previously stopped at Chester.

It was not questioned on the trial or on the argument here that the ticket agent in Elizabeth was authorized to sell tickets from Elizabeth to Chester over the Central Railroad of New Jersey, the Philadelphia and Reading railway and the Baltimore and Ohio railroad. The ticket appears on its face to

be issued by the Central railroad, and has attached three going and three returning coupons in the usual form of a coupon ticket. The coupons between Bound Brook and Philadelphia purport to be issued on account of the Philadelphia and Reading, and the coupons between Philadelphia and Chester on account of the Baltimore and Ohio. It is not necessary to decide that the terms of the published time-table became by the mere fact of publication a part of the contract, as was held by a majority of the Court of King's Bench, in *Denton* v. *Great Northern Railway Co.,* 5 El. & B. 860, and decided by the Court of Appeals in *Le Blanche* v. *London and Northwestern Railway Co., L. R.,* 1 C. P. D. 268; 45 L. J., C. P. 521; 5 *Eng. Rul. Cas.* 392.

The difficulty suggested by Mr. Pollock (*Poll. Cont. (7th Eng. ed.)* 19), does not arise in this case, for the stopping of the train at Chester was an express condition upon which the plaintiff bought his ticket, and the time-table showing that the train made the stop at Chester was handed him with the ticket. The fact that a time-table furnished by the Baltimore and Ohio railroad to the conductor (but not, as far as the case discloses, to the public or to the ticket agent at Elizabeth) showed that the train did not stop at Chester, in no way alters the case. The train had been in the habit of stopping, and the time-tables of the ticket agent at Elizabeth bearing the name of the Baltimore and Ohio, and not denied to have been authorized by that company, showed such a stop. While the authority of the ticket agent to make the contract in question might be modified to correspond with the time-table furnished the conductor, there is no proof that it had been so modified. Whether it had been so modified was within the knowledge of the Baltimore and Ohio, and the failure to prove it justifies the inference that there had been no modification.

The plaintiff had the right to assume that the train would stop at Chester, as his contract required, and was not bound to believe the assertion of the conductor. He was entitled to make reasonable efforts to exercise his right. *Runyan* v. *Central Railroad Co.,* 36 *Vroom* 228, 232. He did no more than to require the conductor to make use of slight physical

force, and yielded immediately and left the car. We think the conduct of the conductor was actionable.

The question remains whether both defendants are liable. The conductor was in the employ of the Baltimore and Ohio Railroad Company, and it is liable for his acts on the principle *respondeat superior.* The other conductor whose route ended at Philadelphia was in the employ of the Philadelphia and Reading Railway Company. The only fact in the case to indicate liability on the part of the Central Railroad Company is the issue of the ticket. The plaintiff's case does not rest upon a tort of the ticket agent at Elizabeth, but upon the theory that the agent at Elizabeth had the right to make the contract, and was therefore guilty of no wrong. The Central railroad would be liable for a violation of its duty as a common carrier if that relation existed at the time between the plaintiff and the company. *Haver* v. *Central Railroad Co.,* 33 *Vroom* 282. Whether that relation existed depends on whether the Central contracted for the carriage of the plaintiff beyond its own line as principal or agent.

The ticket states that in selling the ticket to points on other roads the company assumes no responsibility beyond its own road. It may be questioned whether this provision was assented to by the plaintiff, and, if so, whether it operates to exempt the Central railroad from its common law liability, or only to negative the assumption of any further liability beyond its own road. This need not be determined, since the other facts sufficiently prove that the Central railroad was, to the knowledge of the plaintiff, contracting only as agent as to transportation beyond its own road. The facts that there were separate coupons for different portions of the journey; that they bore the names, in plain type, of the connecting companies, and purported on their face to be issued, as far as the connecting roads were concerned, by the Central railroad as agent only, and that the plaintiff was familiar with the route, justify the inference, in the absence of any denial from the plaintiff, that he knew that the Central railroad was acting as agent only. The relation of common carrier and passenger did not exist as between the plaintiff and the Central Rail-

road Company after the train left the Central's road. The case differs from *Little* v. *Dusenberry,* 17 *Vroom* 614, and *Dunn* v. *Pennsylvania Railroad Co.,* 42 *Id.* 21. In both those cases the relation of carrier and passenger existed between the parties at the time of the injury. The case resembles, rather, *Alabama, &c., Railroad Co.* v. *Holmes,* 75 *Miss.* 371.

There is no evidence that the Central railroad took any part in the management of the train beyond Bound Brook. As far as the case indicates the Baltimore and Ohio railroad was in sole charge of the train at the time the plaintiff was ejected. The legal position of the Central railroad was similar to that of the Pennsylvania Railroad Company in *Pennsylvania Railroad Co.* v. *Jones,* 155 *U. S.* 333. There should have been a nonsuit as to the Central railroad.

It is assigned as error that the court allowed the jury to award damages for the indignity and consequent injury to his feelings. This is the settled law in case of an unlawful eviction. *Allen* v. *C. & P. Ferry Co.,* 17 *Vroom* 198; *Delaware, Lackawanna and Western Railroad Co.* v. *Walsh,* 18 *Id.* 548.

The case differs from the cases cited in the briefs for the plaintiffs in error. The present plaintiff had in his possession and showed the conductor a ticket which entitled him to be carried to Chester, and a time-table apparently authorized by the company which showed that the train was scheduled to stop at Chester. On the face of it he was entitled to be let off at Chester, and the reason for the decision in the cases cited growing out of the propriety of the conductor having evidence of the plaintiff's right is wanting in the present case.

The judgment, however, is a joint judgment and indivisible, and since it must be reversed as to the Central Railroad Company it must be reversed *in toto.* *Paterson* v. *Middlesex and Somerset Traction Co.,* 42 *Vroom* 296.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, GARRETSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY.    12.