IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

### FEBRUARY TERM, 1907.

---

## ALBERT L. RUNYON v. PENNSYLVANIA RAILROAD COMPANY.

### Argued June 5, 1905—Decided November 27, 1907.

1. The fact that a person takes passage upon a railroad train which is not scheduled to stop at a station to which he desires to be carried, and that he does so because he is informed by the agent from whom he purchases his ticket that the train will stop at such station, imposes no obligation upon the company to stop the train at that station for the purpose of letting him off.
2. When a passenger who is riding upon a train under such circumstances, is informed by the conductor that the train will not stop at the station for which he holds a ticket, it is his duty either to tender such fare as will entitle him to ride to some stopping point beyond his station, or else, when requested to do so by the conductor, change trains at a stopping point short of his destination.

---

On defendant's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices PITNEY and REED.

226    NEW JERSEY SUPREME COURT.

Runyon v. Penna. R. R. Co.    74 N. J. L.

For the rule, *Alan H. Strong.*

*Contra,* George T. *Werts.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The plaintiff in this case sues to recover damages for his alleged wrongful expulsion from a railroad train of the defendant company. The material facts upon which he bases his right to recover are as follows: He went to the ticket office of the company at its Broad Street station in Philadelphia, and inquired of the agent at what time he could get the next through train for Lower Jamesburg, and was informed that it left at three-thirty. Receiving this information he purchased a ticket for that station, and, after waiting for about ten minutes, went to the gate and requested the gateman to direct him to the three-thirty train, at the same time showing him his ticket and informing him that it was the train for Lower Jamesburg which he wanted; the gateman thereupon pointed out the train to him, and the plaintiff took his seat therein and proceeded on his journey. Before reaching the city of Trenton he was notified by the conductor of the train that it did not stop at Lower Jamesburg, and that he would have to get off at Trenton. This he refused to do, and when the train reached Trenton he was removed from it, against his will, by the conductor and another employe of the company.

The case of *McDonald* v. *Central Railroad Co.,* 43 *Vroom* 280, is relied upon as supporting the claim of the plaintiff. In that case the passenger, before purchasing his ticket at the Elizabeth station of the defendant company, inquired of the agent there whether a certain train stopped at Chester, in the State of Pennsylvania, and was informed that it did, and was given at the same time a current time-table showing that the train was scheduled to stop at that point; he thereupon purchased a ticket for Chester, and took passage upon that train; while en route he was informed by the conductor of the train that it did not stop at Chester, and that he would have to leave it at Philadelphia. Refusing to do so he was put off by

FEBRUARY TERM, 1907. 227

45 Vroom.　　　　Runyon v. Penna. R. R. Co.

force at the latter station, and brought suit for his wrongful ejection. It was held by the Court of Errors and Appeals that the act of the agent in selling him a ticket upon that train for Chester, and at the same time furnishing him a time-table showing that the train was scheduled to stop at that point, constituted a contract between the defendant company and the plaintiff, by the terms of which the plaintiff was entitled to have the train stop at Chester, and that his ejection, therefore, was wrongful.

It will be observed that the case now before us lacks a vital element which was present in the McDonald case, namely, the furnishing of a time-table by the defendant's agent to the plaintiff, showing that the train concerning which he made inquiry was scheduled to stop at the station to which he purchased his ticket. It is the ordinary case of a passenger who has taken a train which is not scheduled to stop at the station for which he holds a ticket, by reason of misinformation received from the agent from whom he has purchased his ticket, and who has been ejected at a regular station of the company after notification by the conductor that the train did not stop at the point to which he held a ticket, and a request from that official that he leave the train at a stopping point short of his destination, and refusal on his part to comply with the request.

The view expressed in the decisions of some of our sister states, that misinformation as to the stopping of a train at a particular station, given by a ticket agent to an inquiring passenger, and action upon it by the latter, constitute a contract between the railroad company and the passenger, has not been accepted by the courts of this state. In the late case of *Shelton* v. *Erie Railroad Co.,* 44 *Vroom* 558, Mr. Justice Garrison, speaking for the Court of Errors and Appeals, in commenting upon the cases which so hold, says: "The fundamental fallacy of this position is that it assumes the authority of the ticket agents to make contracts for railroad companies. The authority of such agents is notoriously limited to the sale of tickets and to the doing of acts that are ancillary thereto. By no rule of the law of agency or of evidence can the acts or statements of a ticket agent beyond the scope of his limited

228    NEW JERSEY SUPREME COURT.

Runyon v. Penna. R. R. Co.    74 N. J. L.

authority be erected intó a contract binding upon the railroad company. What has been mistaken for this authority to make contracts is the ability of these agents to make trouble for their companies by their negligence in the delivery of tickets, or their mistakes in giving information. The judicial conclusions that have been constructed on this erroneous foundation do not in any way commend themselves to us."

The company in the present case was under no obligation to stop its train at Lower Jamesburg for the plaintiff, notwithstanding the representation made to him by the ticket agent, and it was the duty of the plaintiff, when informed that the train would not stop at that station, either to tender such fare as would entitle him to ride to some stopping point beyond, or else to comply with the request of the conductor, and change trains at a stopping point short of his destination. In the operation of a railroad the safety of those traveling upon it requires that the trains running over it shall be moved according to a prearranged schedule, and this safeguard would be practically destroyed if a conductor was bound to stop his train at a station, not a scheduled stopping point, whenever a passenger was wrongly informed by a ticket agent that the train would take him to that station. As was said in the case of *Railway Company* v. *Pierce*, 47 *Mich.* 282: "A passenger cannot, by reason of such information, compel a conductor to deviate from his appointed scheme, and, when truly informed concerning the rule as to stoppages, he is bound to conform his movements to it, and seek redress in some other way. Everyone is bound to know that the conductor is not invested with general power to run his train as he pleases, and that, so far as he is concerned, trains must conform to schedule."

In the present case the refusal of the plaintiff to leave the defendant company's train, when requested to do so by the conductor, constituted him a trespasser, and justified that officer in ejecting him from the train, using no more violence than was necessary to accomplish his removal.

The rule to show cause will be made absolute.