## Louisville & Nashville Railroad Company v. Gaddie.

(Decided January 19, 1915.)

### Appeal from Knox Circuit Court.

Carriers—Carriers of Passengers—Performance of Contract of Transportation—Carrying to and Stopping at Destination.—A railroad company has the right to make reasonable rules and regulations for the operation of its trains; and it is the duty of the passenger before boarding a train, to ascertain whether it stops at the place to which he desires to go; and if he boards a train not scheduled to stop at his destination, he cannot recover damages because of the refusal of the conductor to stop thereat, although if the passenger at the time he purchases his ticket effects an agreement with or receives information from the ticket agent that the train he proposes to take will stop at his destination to permit him to alight, the company is ordinarily bound by the agreement. Where, however, there is no such agreement or information made or given by the ticket agent when the ticket is purchased, and by mistake of the gateman and brakeman, a passenger is permitted to board a train not scheduled to stop at his destination, the conductor has a right to correct the error, and to require the passenger to leave the train at an intermediate station which is a regular stop and a suitable place to wait for the next train which does stop at the passenger's destination.

BENJAMIN D. WARFIELD and BLACK, BLACK & OWENS for appellant.

B. B. GOLDEN for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Reversing.

J. P. Gaddie sued the Louisville & Nashville Railroad Company in the Knox Circuit Court to recover damages

resulting from an alleged breach of its duty as a common carrier of passengers, in refusing to stop one of its fast passenger trains at the place of plaintiff's destination and permitting him to alight therefrom. There was a verdict and judgment for the plaintiff for $1,000.00. The railroad company appeals.

Plaintiff testified that he is now the president of the Peoples Bank at Pineville and resides in that city, but that in January, 1912, he lived in a brick building about two hundred and fifty yards from the depot at Elys, a station in Knox county, on defendant's line of railroad. That on January 17, 1912, he purchased from the defendant's ticket agent at Frankfort, a ticket which entitled him to be transported to Elys, via Louisville, and that he left for home that afternoon.

At Louisville he changed trains, boarding the next train out of Louisville for Corbin, arriving at Corbin about midnight. There it was again necessary to change trains and to take passage upon a train running from Corbin to Norton, Elys being on that line and about twenty-five miles east of Corbin.

There were two trains leaving Corbin daily on this line that were scheduled to stop at Elys, one leaving about six in the morning, the other about two-thirty in the afternoon, each requiring about one and a half hours to reach Elys.

There was also a fast train leaving over this road at about 3:45 in the morning, but this train was not scheduled to stop at Elys, and plaintiff waited in and around the station until this train was due to leave and boarded it. When the conductor came to collect Gaddie's fare, and saw that his ticket was for Elys, he immediately informed him that the train would not stop at that place and that he would have to alight at Flat Lick, an intermediate station, one mile west of Elys. This plaintiff said he would not do. Later, as the train was nearing Barbourville, the county seat of Knox county, the conductor asked Gaddie if he would not rather alight at Barbourville, where he could get a hotel, than at Flat Lick, but plaintiff declined to accept the suggestion, and he says that the conductor did not speak to him after that.

When the train stopped at Flat Lick plaintiff failed to alight. He admits that he knew that Elys was not a regular stop for that train, having lived at said station

for years, but testifies that he did not think the conductor would be so contrary as not to stop there for him to get off. However, he was mistaken in this and was carried on past Elys to the next regular stopping place—Four Mile. There he voluntarily left the train and proceeded to walk the two miles back to Elys. He testifies that it was so dark that he could not see anything, and that he fell into a ditch and over some cross-ties and skinned his legs, and was badly injured. That the coach was very warm when he got off and coming out in the cold air and having to walk so far on the ice and sleet, he was chilled and contracted a cold and suffered greatly.

1. It has been held that a carrier has a right to make and enforce reasonable rules and regulations for the operation of its trains; that it is the duty of a person proposing to become a passenger, to ascertain, before boarding the train, whether it stops at his destination; and that a passenger who boards a train not scheduled to stop at the station to which he desires to go, can not recover damages for the failure of the conductor to stop thereat.

In L. & N. v. Miles, 100 Ky., 84, 37 S. W., 486, 18 R., 580, it was said that "if it be within the power of a passenger by getting aboard a train to compel it to stop at any station he may designate, then the authority of the company to make reasonable rules for the conduct of its business and the running of its trains is destroyed, the traveling public would be seriously interrupted; a railroad could no longer calculate upon its trains making certain connections with trains on other roads, and the hazard of operating them would be increased."

The rule stated in that case, however, is subject to the limitation expressed later in the opinion in L. & N. v. Scott, 141 Ky., 538, 133 S. W., 800, 34 L. R. A. (n. s.), 206, 1912C Ann. Cas., 547, wherein it was held that a railroad company is ordinarily bound by the act of its ticket agent in agreeing with or informing the purchaser of a ticket to a certain station that the train proposed by the passenger to be taken will stop at the station for the purpose of permitting the passenger to alight thereat.

2. In the case at bar Gaddie had no information from or agreement with any ticket agent that the train he boarded would stop at Elys; but he claims and tes-

tified that when the train upon which he took passage at Corbin was announced, he went through the gate through which all passengers were required to pass in order to reach the train; that the gateman called for the exhibition of tickets; that he held his ticket up and the gateman pointed and called out the number of the track on which was standing the train which he boarded. He further testified that as he was about to step on the train the brakeman asked him where he was going, and he replied that he was going to Elys, and went on in the train without objection upon the part of the brakeman.

Because of these facts, it is contended that it was the contractual duty of the company to stop the train at Elys.

The greater weight of authority supports the rule that where a passenger, by reason of incorrect information of the carrier's employes, boards a train not scheduled to stop at the station for which he has a ticket and to which he desires to go, the carrier has a right to correct the mistake and to require the passenger to alight at a regular stopping place, which is a suitable place, from which he may take the next regular train that does stop at his destination; and that it is the duty of the passenger to stop off at such place and wait for such train. Carter v. Southern Ry., 75 S. C., 355, 55 S. E., 771; Black v. A. C. Line, 82 S. C., 478, 64 S. E.. 418; Runyon v. Penna. Ry., 74 N. J. L., 225, 68 Atl., 107; International Ry. v. Hassell, 62 Tex., 256, 50 Am. Rep., 525; Miller v. King, 21 App. Div. (N. Y.), 192, 47 N. Y. Supp., 534; L. S. & M. S. v. Pierce, 47 Mich., 277, 11 N. W., 157; Turner v. McCook, 77 Mo. App., 198; St. L. & S. W. v. Wallace, 32 Tex. Civ. App., 312, 74 S. W., 581; St. L. & S. W. v. Townsend, 45 Tex. Civ. App., 616, 101 S. W., 455. This, we think, to be a sound rule of law.

We do not mean to be understood, however, as holding that when the passenger, at the time he purchases his ticket, is informed by the ticket agent that the train he proposes to take will stop at his destination to permit him to alight, although it is not a regular scheduled stop for such train, the carrier may correct such error and the passenger be required to alight at an intermediate station, for the carrier in such case has made its contract; and that contract the passenger has a right to enforce.

But, where no specific agreement for such stopping of the train is clearly shown to have been effected at the time of the purchase of the ticket, then the mere act of a gateman or brakeman in making no objections to the boarding of the train by the passenger ought not and will not estop the company from a correction of the error by the conductor requiring the passenger to leave the train at a suitable intermediate point, there to wait for and take passage upon a train which does stop at the passenger's destination. Nor do we hold that, where a passenger makes inquiry of the gatekeeper, or those in charge of the train, as to the train he should take, and, acting under their directions, is caused to board the wrong car, that he cannot recover for lost time and increased expenses necessarily incurred by reason of such incorrect information. This question is not before us here. What we do hold is, that, under the circumstances testified to by plaintiff, the defendant owed plaintiff no duty to stop its fast train at Elys for the purpose of letting him off. It was his duty, when informed by the conductor that the train would not stop at Elys, to elect to stop at some one of the intermediate stations at which the train would stop before reaching Elys; and this he refused to do and he has no cause of action against the defendant. The court improperly refused to instruct the jury to find for the defendant.

The judgment is reversed for proceedings consistent with this opinion.