GULF, C. & S. F. RY. CO. v. SANDERSON.
(No. 6096.)

(Court of Civil Appeals of Texas. Austin.
Nov. 5, 1919. Rehearing Denied
Dec. 10, 1919.)

1. LIMITATION OF ACTIONS ⊙⟿127(12)—INTRO-
DUCTION OF NEW CAUSE OF ACTION BY
AMENDED PETITION.

While pleadings in justice court may be in-
formal, and great liberality is indulged both in
substance and form, *held* that, when plaintiff's
claim, filed in justice court, based on the refusal
of a conductor of a train to stop at the station
at which he desired to alight, was founded on
an action ex contractu, an amendment, claim-
ing damages for the conductor's insulting words
and conduct, which sounded in tort, introduced
a new cause of action, and was barred, where
the amendment was not filed until more than
five years after the cause of action accrued.

2. CARRIERS ⊙⟿271—REGULATIONS BY CAR-
RIERS AS TO STATIONS AT WHICH TRAINS
STOP.

A railroad company has the right to make
reasonable rules and regulations for the opera-
tion of its trains, and to provide schedules and
determine at what stations passenger trains
shall stop, and it is the duty of a person pro-
posing to become a passenger to ascertain be-
fore boarding a train whether it stops at his
destination, and he cannot recover damages for
failure of the conductor to stop where the train
was not scheduled.

4. CARRIERS ⊙⟿271—REFUSAL OF CONDUCTOR
TO STOP TRAIN AT STATION WHERE IT WAS
NOT SCHEDULED TO STOP.

Where, when plaintiff requested the con-
ductor to stop the train at a station at which
it was not scheduled to stop, the conductor in-
formed him that he was riding on a stock pass,
and that he would not stop the train, and plain-
tiff, while the train was stopped at an intermedi-
ate station, procured a ticket to the station at
which he desired to alight, *held* that, as the
ticket notified him the train in question did not
stop there, the conductor was justified in re-
fusing to stop the train, though plaintiff had
procured such ticket.

Appeal from Coleman County Court; W.
Marcus Weatherred; Judge.

Action by D. F. Sanderson against the Gulf,
Colorado & Santa Fé Railway Company, begun
in justice court and appealed to the county
court. From a judgment there for plaintiff,
defendant appeals. Reversed and rendered.

Snodgrass, Dibrell & Snodgrass, of Cole-
man, and Terry, Cavin & Mills, F. J. Wren,
and O. B. Wigley, all of Galveston, for appel-
lant.

Critz & Woodward, of Coleman, for ap-
pellee.

BRADY, J. Appellee instituted this suit in
the justice court March 4, 1913, alleging in his
written petition that appellant's agent at
Zephyr, Tex., sold him about October 27, 1912,
a ticket to Ricker, the next station on appel-
lant's road, and he became a passenger upon
a train going to Ricker; that the conductor
accepted his ticket, but refused to stop the
train at Ricker, and refused to allow him to
alight therefrom at such station, although
requested by appellee to do so; that appellee
told the conductor that his, appellee's, wife
was sick at Ricker, but that the conductor
still refused to stop the train and permit ap-
pellee to alight; and that he was damaged in
the sum of $95 "by reason of the mental an-
guish suffered in not being permitted to alight
from said train at said point and see his said
wife, who was then sick; that other passen-
gers were on the train and witnessed the re-
fusal of defendant's conductor to permit said
claimant to alight, which caused much embar-
rassment to claimant." Appellee also claimed
damages in the sum of $4 for the expense of a
trip from Brownwood to Ricker, which was
occasioned by his having been carried on
through to Brownwood. To this pleading
appellant interposed a general demurrer and
a general denial.

On July 17, 1915, appellee filed his amended
original petition in the justice court, which
differed in substance from his original claim
only in these particulars: His amendment
shows that he expended 25 per cent. for the
ticket from Zephyr to Ricker; that before
reaching Zephyr the conductor refused to stop
the train, because appellee was then riding on
stock transportation; and that appellee in-
formed the conductor that he had received a
letter, informing him of the serious illness of
his wife at Ricker; and that upon the refusal
of the conductor to stop the train and permit
him to get off at Ricker, he purchased a ticket
to Ricker at Zephyr, where the train stopped a
few minutes. The amendment still restricted
appellee's claim for mental injuries to the
refusal of the conductor to stop the train at
Ricker, but appellee specifically alleged that
by reason of failure to stop the train he was
compelled to pay $5 at Brownwood for a
conveyance back to Ricker, and prayed for
total damage in the sum of $75.

No oral pleadings in the justice court were
shown, and it is not claimed that there were
any. The justice of the peace rendered judg-
ment for appellee for the sum of $22.50.

In the county court appellee filed his second
amended original petition, which did not dif-
fer in substance from his first amended claim
in the justice court, but he prayed for dam-
ages in the sum of $100.

Appellant demurred to this pleading, and
also specially answered that appellee was
riding on the train in question on stock trans-
portation, good for passage from Temple to

some point beyond Brownwood, and that on the way the conductor had informed appellee, before the train reached Ricker, that it was not scheduled to stop there, and did not and would not stop at Ricker; that with this knowledge appellee got off the train at Zephyr, and purchased a ticket to Ricker, and that he reboarded the train with full knowledge that it was not scheduled to stop at Ricker, and that he could have used other trains to reach it; that therefore appellant was not under any duty to transport appellee on the particular train to Ricker, or to stop it there; and that appellee was estopped to claim any damages.

On June 17, 1918, in the county court, appellee filed his third amended original petition, in which he alleged that the conductor informed him that he was then riding on live-stock transportation, and therefore he could not stop the train at Ricker, but that appellee could purchase a ticket at Zephyr, reading to Ricker, and that the train would then be stopped, and appellee permitted to alight. In this pleading, appellee for the first time alleged that in his conversation with appellee the conductor used insulting language, and acted towards him in a harsh and angry manner in the presence of strangers; and that the acts, words, and . conduct of the conductor caused him great humiliation and shame. In other respects this pleading is substantially the same as the preceding ones, but appellee increased his claim for damages to $150.

Appellant demurred generally and specially to the third amended claim, and specially pleaded that the claim for damages for alleged insulting words and conduct of the conductor was barred by the two and four years statutes of limitation, in that it constituted a new cause of action asserted more than four years after the cause of action accrued.

The case was submitted to a jury upon special issues, which in substance submitted the questions whether the acts or words of the conductor were such as would naturally humiliate appellee, and did they actually humiliate him, and the amount of damages for such humiliation. The jury answered these issues affirmatively, and placed the damages at $25, upon which the court entered judgment for appellee.

The court, over appellee's protest, refused to submit to the jury that phase of the case in which appellee claimed damages for the failure and refusal of appellant's conductor to stop the train, and to permit appellee to get off at Ricker.

## Opinion.

[1] The first question that arises upon this appeal is whether appellee's third amended original claim or petition, which was filed over five years after the cause of action accrued, and which claimed damages for mental distress and humiliation because of the alleged acts, words, and conduct of the conductor, constituted a new cause of action, which was barred by the two and four years' statutes of limitation. Those allegations being the basis of the verdict and judgment, we would be required to reverse this case if a new cause of action was asserted. It is conceded by appellee's counsel that, if his original petition was not sufficient to admit proof of the facts concerning this phase of the case, an amendment filed more than two years thereafter would be too late.

The rule in this state is that pleadings in the justice court may be informal, and the same strictness is not required as in the district and county courts. Great liberality is indulged as to pleadings in the justice court, both in substance and form. Keeping in mind this rule, we have carefully compared appellee's third amended claim with his previous pleadings, and have come to the conclusion that, indulging the greatest latitude, the cause of action alleged in the latter pleading is not embraced within any of the former claims. The pleadings in the justice court were restricted to an action for damages for mental suffering and distress, arising out of alleged breach of contract. Conceding that it was a case in which damages for mental suffering were recoverable, which may be doubted, it was clearly an action ex contractu; whereas, the claim for damages resulting from the conductor's alleged insulting words and conduct sounds in tort.

Under the test laid down by our Supreme Court in Phœnix Lbr. Co. v. Houston Water Co., 94 Tex. 456, 61 S. W. 707, to determine the identity of causes of action, we are clearly of the opinion that the two were not the same. It follows that the latter claim was barred by limitation, and that appellant's assignments attacking the verdict and judgment on this ground must be sustained.

[2-4] There is another phase of the case which must be considered. Appellee in his brief has filed a cross-assignment of error, complaining of the trial court's refusal to submit the question of damages alleged to have been sustained by reason of the failure of the conductor to stop the train and permit him to alight at Ricker. The trial court evidently declined to present this question to the jury upon the theory that the evidence did not show any contract or duty upon the part of appellant to stop the train at Ricker. The undisputed evidence showed that the particular train was not scheduled to stop at Ricker, and the ticket purchased by appellee at Zephyr upon its face provided that it was "good only on trains scheduled to stop at destination."

The rule is well established in this state that a railway company has the right to make reasonable rules and regulations for the operation of its trains, and to provide schedules and determine at what stations trains should

stop, under certain conditions and regulations. It is also the general rule that it is the duty of a person proposing to become a passenger to ascertain, before boarding the train, whether it stops at his destination; and that he cannot recover damages for the failure of the conductor to stop at a station where the train is not scheduled to stop. Beauchamp v. Railway Co., 56 Tex. 240; G., C. & S. F. Ry. Co. v. Moore, 98 Tex. 302, 83 S. W. 362, 4 Ann. Cas. 770; T. & P. Ry. Co. v. Bell, 39 Tex. Civ. App. 412, 87 S. W. 730; L. & N. Ry. Co. v. Caddie, 162 Ky. 205, 172 S. W. 514, L. R. A. 1915D, 705.

However, appellee attempts to avoid this rule upon the grounds that he did not read, nor have time to read, his ticket before boarding the train, and that he believed from what the conductor had said to him about having no ticket, and about his riding on a stock pass, that if he bought a ticket the train would stop, and the further fact that he bought the ticket in the presence of the conductor; that he had previously ridden on this same train which had stopped at Ricker, and that he knew nothing about the published schedule.

Appellee cites several cases in support of his contention that these circumstances created an exception to the rule that he is bound by the regulations and schedules and the provisions of the ticket, among which are: Renfro v. Tex. Central Ry. Co., 141 S. W. 820; M., K. & T. v. Herring, 61 Tex. Civ. App. 543, 127 S. W. 1155, 130 S. W. 1039, decided by this court. In these cases, however, the facts were materially different. In each of them there was either a breach of a plain contract, or there were representations and statements by the employés of the railway company upon which the passenger relied, and by which he was misled. In the instant case, the circumstances relied upon by appellee to take it out of the rule are, in our opinion, entirely too remote. While appellee testified that the conductor was standing near the window at Zephyr when he purchased his ticket, there is no testimony that the conductor knew of such purchase, or of appellee's intention to use the ticket on the particular train as a basis for his demand that it stop at that point. Appellee had been previously informed by the conductor that the train did not stop at Ricker, and that he would not let him off there. The mere statement of the conductor that he was riding on a stock pass and had no ticket, in connection with appellee's request that he stop the train at Ricker, does not amount to a representation that if he purchased a ticket to that destination he would stop the train, although not scheduled to stop there.

We conclude that, in the circumstances of this case, appellant was under no duty to stop the train and permit appellee to get off at the station in question; and appellee's cross-assignment of error is overruled.

For the reasons indicated, this case will be reversed, and here rendered for appellant.

Reversed and rendered.